ELEANOR M. STUART *vs.* JOHN D. DOYLE ET ALS.
JOEL C. STUART *vs.* JOHN D. DOYLE ET ALS.

First Judicial District, Hartford, January Term, 1921.

WHEELER, C. J., BEACH, GAGER, CURTIS and BURPEE, Js.

Two automobiles driven by the defendants O and D, one going north and the other south, collided sideways, and the one coming south immediately sprung over to the east side of the road and hit the car owned and driven by the plaintiff husband, accompanied by his wife, both of whom were injured and sued separately. The plaintiff's injuries were in each case alleged to have been caused by the concurrent negligence of each defendant in bringing about the first collision, and by the negligence of the driver of the south-bound car in allowing his car to cross the road and run into the car of the plaintiffs. *Held* that a general verdict for each of the plaintiffs established the fact that the collision of the Doyle and Stuart automobiles was caused by the concurrent negligence of O'Neil and Doyle,—a conclusion to which the jury might reasonably have come upon the evidence before them.

It appeared that O, the driver of the north-bound car just ahead of the plaintiffs, was an employee of one S, also a defendant, and the parties were at issue as to whether the tortious act of O was committed under such circumstances as to render S liable. The evidence was somewhat ambiguous in its nature, leaving the question open to either of two interpretations, and thereupon the trial court, with suitable instructions, submitted to the jury whether or not O was acting within the scope of his employment at the time of the accident. *Held* that the course pursued by the trial court was the correct one.

The defendant S had two licensed chauffeurs and cars, but it did not appear whether they were available or not at that time to bring help from the railroad station in Hartford to S's tobacco plantations in South Windsor,—which was what O was doing with his own car at the time of the accident. *Held* that inasmuch as S had the names of these men and the means of procuring their attendance as witnesses, but failed to produce them and did not account for his failure, it was a permissible inference for the jury to draw, that, had these drivers appeared and testified, their testimony would have disclosed that they were not available to go for the help which O went for and was returning with at the time of the accident.

Argued January 6th—decided February 21st, 1921.

ACTIONS by a wife and her husband, respectively, the former to recover damages for personal injuries, and the latter for injuries to his automobile and for expenses incurred by him for medical services to his wife, alleged to have been caused by the negligence of the defendants, brought to the Superior Court in Hartford County and tried together to the jury before *Greene, J.;* verdict and judgment for the plaintiff wife for $3,500 and for the plaintiff husband for $686, against the defendants Doyle and Shepard, and in favor of the defendant O'Neil,[1] from which the losing defendants appealed. *No error.*

*A. Storrs Campbell,* for the appellant (defendant Doyle).

*Lewis Sperry* and *Alexander W. Creedon,* for the appellant (defendant Shepard).

*Lawrence A. Howard,* for the appellee (plaintiff).

CURTIS, J. The error assigned in each case is the refusal of the trial court to set aside the verdict rendered, as contrary to and against the evidence.

The court filed findings of certain undisputed facts, which are, in substance, as follows:—

On August 21st, 1918, the plaintiff John C. Stuart, accompanied by his wife, the plaintiff Eleanor M. Stuart, was driving his automobile northerly from East Hartford to South Windsor, Connecticut. Stuart's automobile was following the automobile of the defendant O'Neil. The defendant Doyle was driving an automobile in a southerly direction on the same high-

---

[1] The anomaly of a verdict against the defendant Shepard, the master, because of the negligence of O'Neil his servant, accompanied by a verdict in the same action in favor of O'Neil, arises from the fact that the plaintiffs asked for no verdict against O'Neil if the jury found that Shepard was liable.

way. At a point on the road near the Podunk River bridge, so-called, the car of the defendant O'Neil and the car of the defendant Doyle collided. The car of the defendant Doyle then proceeded in an easterly direction across the highway and collided with Stuart's automobile. The defendant O'Neil, at the time of the accident, had in his automobile three laborers, whom he was carrying to the farm of the defendant Shepard.

The testimony of O'Neil and Shepard was the only evidence produced to establish the question of the agency of O'Neil and the scope of his authority or employment. The evidence presented is made a part of the record.

In each complaint the negligence complained of was alleged as follows: "Said injuries were caused by the negligence of the defendant O'Neil in failing to give the defendant Doyle one half of the traveled way and a fair opportunity to pass and in negligently colliding with him and by the negligence of the defendant Doyle in failing to avoid the defendant O'Neil and in negligently colliding with him and in negligently allowing his own car to spring across the road into the car in which the plaintiff was riding and in driving his own car at an excessive and dangerous rate of speed. During all the time mentioned above the defendant O'Neil was engaged within the scope of his employment as a servant and agent of the defendant J. E. Shepard."

As the reasons of appeal do not involve the charge of the court, we are to assume that the charge was correct and that the verdict was in accord with the charge.

The general verdict against Doyle and Shepard imports the finding by the jury that the collision of the O'Neil and Doyle automobiles was caused by the concurrent negligence of each, and that the collision of the Doyle automobile with the Stuart automobile was

caused by the prior collision of the O'Neil and Doyle automobiles. The only negligence of Doyle, alleged in the complaint, which could be involved in a collision between the Doyle and O'Neil cars caused by their concurrent negligence, was his negligence "in failing to avoid the defendant O'Neil and . . . in driving his own car at an excessive and dangerous rate of speed." The jury having found that the collision occurred through the concurrent negligence of O'Neil and Doyle, the verdict imports that the jury found that both grounds of negligence alleged against Doyle, which would be involved in a finding of concurrent negligence, were proved. *Aaronson* v. *New Haven*, 94 Conn. 690, 110 Atl. 872. These verdicts, therefore, import the finding by the jury: first, that Doyle in the exercise of due care as his automobile approached that of O'Neil could have avoided colliding with it; and second, that as he drove his automobile before and at the time of his collision with O'Neil's automobile, his speed was so great as to be unreasonable, considering the time, place and use of the highway, and such as to prevent him in the use of reasonable care from controlling his automobile so as to avoid a collision with O'Neil's automobile.

Under the conflicting evidence the jury could reasonably have found that the collision between the automobiles of O'Neil and Doyle was caused by the negligence of O'Neil in failing to give the defendant Doyle one half of the traveled way and a fair opportunity to pass, and by the concurrent negligence of Doyle in failing to avoid the collision by the exercise of due care in operating his automobile, and by his negligence in driving his automobile at a speed so great as to be unreasonable, considering the time, place and use of the highway, and at such speed as to prevent him in the use of reasonable care from controlling his

automobile so as to avoid a collision with O'Neil's automobile.   O'Neil testified, in substance, as to Doyle's driving as their automobiles approached: Doyle came toward me unduly fast, he came toward me very fast, he was not coming at a safe speed, he was going nearer thirty miles an hour than fifteen.   Under this evidence, taken in connection with the force with which Doyle's automobile struck Stuart's automobile after Doyle's collision with O'Neil, the jury could have reasonably found that Doyle was guilty of concurrent negligence with O'Neil in causing their collision and the subsequent collision of the Doyle and Stuart automobiles.   There was no error, therefore, in the denial of Doyle's motion to set aside the verdict.

We will now turn to the appeal of Shepard.   As stated above, under the evidence the jury could reasonably have found that O'Neil was negligent, and that such negligence was a proximate cause of the collision of his automobile with that of Doyle and of Doyle's automobile with that of Stuart.

Shepard urges that even if O'Neil caused the collision with Doyle by his negligent driving, yet that he (Shepard) is in no way responsible for the collision, because, upon the evidence presented, O'Neil at the time of said collision could not have been reasonably found to have been his employee acting within the scope of his authority or employment.   The only testimony presented by the plaintiff as to this feature of the cases, was that of the defendant Shepard and that of the defendant O'Neil.   Shepard's testimony was in substance as follows: He owned and conducted several tobacco plantations in South Windsor and thereabouts, and employed the defendant O'Neil as bookkeeper in his office at South Windsor.   O'Neil in Shepard's absence answered the telephone and took charge of the inside office work.   In August he had usually some trouble in

getting help, and got help through agencies. Sometimes the help were picked up with trucks at the agencies; sometimes they came from New York by train, and he or his employees would meet the train with trucks and pick them up. When it was reported to the office that men were coming by train, the bookkeeper (the defendant O'Neil) usually got hold of Shepard, and he would send a chauffeur with an automobile to meet them. He had two men with drivers' licenses, and sent one or both if necessary. He did not know how it came about that his bookkeeper, O'Neil, went to the railroad station on August 21st to get a couple of men to bring out to the plantation. While he was away from the office, if telephones came in that there were men at the railroad station, O'Neil would try to reach Shepard on the telephone. He did not know why O'Neil did not reach him that night. Shepard did not know that night that any men were coming. O'Neil's duties were the regular line of office work; to charge up sales, send out bills, attend to the correspondence, make up the payroll, keep the bank balance, see to the shipping, and do whatever would come on an inside man. Shepard had a light express-truck and a heavy touring-car, and two licensed drivers to go for help in Hartford. O'Neil had a little roadster of his own, in which he drives back and forth from his home in Hartford five miles away. He did not order O'Neil to go for these men in his car; it was out of the line of O'Neil's duties. O'Neil usually quit work at five o'clock. Shepard had no knowledge of his going for help on this occasion or on any previous occasion. O'Neil answered all telephone calls. If one came about help coming, O'Neil would telephone to the plantation and get hold of one of the drivers, if he was not out on other duties, and tell him to get the help. It was an office matter to get the help to the plantations. If I were not at the office when a telephone came

that help were coming from New York, I should expect O'Neil to see that the help got to the plantation.

The defendant O'Neil testified in substance as follows: I work in Shepard's office on the plantation as bookkeeper, attending to all matters pertaining to the inside. I sometimes receive telephone calls that men are ready to come to the plantation to work. If Shepard is around I notify him of this. If I can't reach Shepard I tell one of the two men that have drivers' licenses, who go after the men. I usually know to which plantation the men are to go; if not, I would find out from the foremen. On August 21st, in the afternoon, an agency notified me at the office by telephone that two men were coming on the four o'clock train out of New York, arriving in Hartford about seven o'clock. I tried to inform Shepard, but could not reach him, and as there were only two men coming I took it upon myself to go to my home in Hartford for supper, then to meet the train and take the men up to South Windsor in my own car. The collision occurred while I was taking the men up. It was my duty, in Shepard's absence, to give orders to one of the two licensed drivers to get the men. My going for the men was my voluntary act; Shepard knew nothing of it; it was not what I was hired to do. It was in my line of duty to receive telephone calls, and in Shepard's absence to tell one of the drivers to get the men, and see that the men were delivered to the proper plantation. It was my duty to see that the help were delivered to the proper plantation.

From the testimony of O'Neil and Shepard, summarized above, the trial court was of the following opinion: "This testimony of both witnesses may be understood, in connection with their other testimony, to mean that O'Neil's duty was only to see that the men were transported by the means provided by Mr. Shepard, or it may mean that it was O'Neil's duty to see that

the men got to the proper farm at all events, whether he used the particular means of transportation provided or not. If the latter were the meaning, it would be within the scope of O'Neil's employment to see that the men got to the proper farm, and he would be acting within the scope of his employment even though he used a means of transportation different from that indicated in his orders." The trial court thereupon submitted to the jury the question whether or not the conduct of O'Neil in transporting the help from the Hartford railroad station was within the scope of his employment under the evidence presented.

In *Turner* v. *American District Tel. & Mess. Co.*, 94 Conn. 707, 712, 110 Atl. 540, the court states the conditions under which an employer may be liable for the tort of his agent: "From this statement it appears that there are three sets of conditions under which an employer may be liable for the tort of his agent, to wit: (1) when the tortious act is done in obedience to the express orders or directions of the master; (2) when it is done in the execution of the master's business within the scope of his employment; and (3) when it is warranted by the express or implied authority conferred upon the servant, considering the nature of the services required, instructions given, and the circumstances under which the act was done." Under the evidence presented, ambiguous in its nature, it was a fact for the jury to determine whether the act of O'Neil in transporting the help on the night in question was warranted by the express or implied authority conferred upon him, considering the nature of the services required, the instructions given, and the circumstances under which the act was done.

The mere fact that only two witnesses, Shepard and O'Neil, the master and the servant, testified as to O'Neil's employment and the scope of his duties, and

characterized his act in transporting the help as a voluntary act, does not necessarily make the interpretation of their testimony a question of law, to be decided in accord with their characterization of O'Neil's act. The action of the trial court in submitting to the jury the question whether O'Neil was acting within the scope of his employment in transporting the help in his own automobile at the time in question, was correct.

Furthermore, there is no evidence in the case to the point whether the two licensed chauffeurs and cars, or either of them, were available to go for help on August 21st after O'Neil was notified that help would arrive at Hartford that evening. Whether they were available or not, was a fact of evidential value as to whether or not O'Neil was on that evening acting within the scope of his implied authority in himself transporting help from Hartford.

Upon the trial the defendant Shepard knew, or had in his possession the means of knowing, the names of his two employees, the licensed drivers of his automobiles, who ordinarily went in automobiles to the Hartford railroad station for help. He therefore had the means of procuring the attendance of those witnesses to testify as to whether or not they were available to go for help on August 21st after O'Neil was notified that help would arrive at the Hartford railroad station that evening, or, if Shepard could not procure the attendance of such witnesses, he could show that such failure was not his fault. He neither produced such witnesses nor accounted for his failure to produce them. The plaintiff would not know the names of such possible witnesses, nor did he have in his possession means of learning their names. Under the circumstances it was a permissible inference for the jury to find that the two licensed drivers of automobiles were procurable as witnesses by Shepard, and that their testimony, if produced, would

have disclosed that they were not available to go for help on August 21st after O'Neil was notified that help would arrive that evening. . Chamberlayne's Hand Book of Evidence, § 435 *et seq.;* 2 Modern Law of Evidence, Chamberlayne, 1075 *et seq.;; Throckmorton* v. *Chapman,* 65 Conn. 441, 32 Atl. 930; *State* v. *Hogan,* 67 Conn. 581, 35 Atl. 508; *Tetreault* v. *Connecticut Co.,* 81 Conn. 556, 71 Atl. 786; *Steinert* v. *Whitcomb,* 84 Conn. 262, 79 Atl. 675; *Verdi* v. *Donahue,* 91 Conn. 448, 455, 99 Atl. 1041.  If such permissible inference were made by the jury, and coupled with  the testimony of Shepard and O'Neil to the effect that it was within the scope of O'Neil's employment to see to it that the help were brought from the Hartford railroad station on that evening, the jury, acting reasonably, could hardly fail to find that on the day in question it was within the scope of O'Neil's employment, in the absence of the two licensed drivers, to meet the help and bring them to the plantation in his own car.

The submission to the jury of the question of whether O'Neil's action in meeting the help and in carrying them to the plantation in his own automobile on the evening in question was within the scope of O'Neil's employment, was,under all the circumstances of these cases, the proper procedure for the trial court to follow.

There is no error.

In this opinion the other judges concurred.