VICTOR DE NEZZO, ADMINISTRATOR, vs. GENERAL
BAKING COMPANY.

*Third Judicial District, New Haven, June Term, 1927.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

The jury might reasonably have found that when an immediate and pressing need for a quantity of yeast arose in the defendant's bakery, the foreman in charge of the night shift, who was responsible for the production of the bread and whose duties were exclusively within the plant, took one of the defendant's automobiles, despite the fact that he had been forbidden to drive them and was not a licensed operator, procured the yeast from

---

* Transferred from First Judicial District.

De Nezzo v. General Baking Co.

a distributor with whom the defendant had an arrangement for twenty-four-hour service but who could not, at that early hour of the morning, make a speedy delivery, and, while returning to the bakery, negligently ran into and killed the plaintiff's intestate. The jury returned a verdict for the plaintiff. *Held* that the jury's conclusion that the foreman was acting within the scope of his employment was not unreasonable, illogical or contrary to law.

Argued June 8th—decided June 28th, 1927.

ACTION to recover damages for the death of the plaintiff's intestate, alleged to have been caused by the negligence of the defendant, brought to the Superior Court in Hartford County and tried to the jury before *Marvin, J.;* verdict and judgment for the plaintiff for $3,414, and appeal by the defendant. *No error.*

*Allan E. Brosmith,* for the appellant (defendant).

*Frank Covello,* with whom, on the brief, was *Francis A. Pallotti,* for the appellee (plaintiff).

MALTBIE, J.  Plaintiff's intestate was killed by an automobile owned by the defendant corporation and being operated at the time of the accident by one of its employees, Bernier. The sole contention of the defendant upon this appeal is that Bernier was not at the time acting within the scope of his employment.

The jury might have found the following facts: The defendant is engaged in the baking business and at its Hartford plant produces bread in large quantities. Its employees work in shifts and Bernier was foreman of a shift which worked during the latter part of the night and the early morning. He was in charge of the production of bread during these hours, and while there was over him a superintendent and a plant manager, at the period in question neither of these men was in the plant in the early hours of the

morning and the responsibility for the production of bread rested on him.. The defendant purchases the yeast it needs from the Fleischmann Company, which has a branch in Hartford. This company furnishes the defendant a twenty-four-hour service, that is, in addition to its regular daily deliveries, which begin at seven o'clock in the morning, it stands ready to send yeast to the defendant when it is required by day or night. Its place of business opens at six o'clock in the morning, but at night certain of its employees can be reached by telephone, and they undertake to see that the yeast is delivered. Before the accident in question, the defendant had at times availed itself of this method of securing yeast at night; but its own employees had also at times gone for the yeast, particularly in the early morning or the middle of the afternoon. According to the testimony of the shipping clerk at the office of the Fleischmann Company, the shortest time in which the employees of the defendant could secure yeast at night would be to come for it, and from this evidence the jury might well have inferred that this was also true if yeast was needed between six o'clock, when the office of the Fleischmann Company opened, and seven o'clock, when its deliveries began.

At about six o'clock on the morning of the accident a batch of dough had been mixed by the employees working under Bernier, and there was immediate need of some yeast. There were then at the plant some salesmen, employed to drive automobiles of the defendant for the delivery of bread, and a garage man, who was also licensed to operate automobiles and had authority to use those of the defendant on occasion. It was not a part of the duties of any of these men to go for yeast, nor had Bernier any authority to direct them to do so, but, as a matter of co-operation, they

De Nezzo *v.* General Baking Co.

would have gone had he asked. Bernier was not licensed to drive automobiles; there were notices posted about the plant forbidding employees to use any automobile of the company without a written permit from the manager, sales manager or his assistant, or the superintendent; and Bernier had been personally forbidden to use the automobiles of the company. According to the testimony of the plant manager, Bernier's duties were exclusively within the plant. There was at the plant a small automobile which was maintained for the use of the sales manager and which, owing to a shortage of cars, had been used by other employees, particularly in going out to make repairs to automobiles on the road, and this, without securing any written permission. Instead of telephoning for the yeast required or asking one of the salesmen or the garage man to go for it, Bernier, wholly without permission, took the small automobile, went for it, and while returning to the plant ran into the plaintiff's intestate.

Whether or not an employee is acting within the scope of his employment is ordinarily a question of fact, and a jury's conclusion that he is can only be set aside where, upon all the evidence, it appears to be unreasonable, illogical or contrary to the rules of law. *Russo* v. *McAviney,* 96 Conn. 21, 24, 112 Atl. 657. In going for the yeast, Bernier was not engaged upon any private enterprise of his own, but was acting in strict furtherance of his employer's business. The jury might reasonably have concluded that the need for the yeast arose suddenly and was somewhat in the nature of an emergency; that the best way to secure it speedily was to have some one go for it; and that there was no superior officer to whom Bernier could appeal for assistance or for permission to go himself and no one whom he had the right to send. All that

appears as to his express authority is that it was his business to see that bread was produced and the testimony of the defendant's plant manager that his duties were exclusively within the plant; but as to the latter, the jury might well have considered the probable interest of the witness from whom the testimony came and have at the most understood it to be a statement applicable to the ordinary conduct of the business, not to a situation such as that which led to Bernier's leaving the factory on this occasion. Whether Bernier telephoned for the yeast, or sought the co-operation of another employee of the defendant, or went himself, his authority must upon the evidence rest upon an implication arising out of his duty to see that the bread was produced. A conclusion that he had implied authority to go himself would not be an unreasonable one and hence the jury would be entitled to find that he had that authority. *Stuart* v. *Doyle,* 95 Conn. 732, 736, 112 Atl. 653; *Russo* v. *McAviney,* 96 Conn. 21, 27, 112 Atl. 657. If he had authority to go for the yeast, the fact that he disobeyed the rules or instructions of the defendant in taking the automobile would not avail to defeat a recovery. *Son* v. *Hartford Ice Cream Co.,* 102 Conn. 696, 700, 129 Atl. 778; *Loomis* v. *Hollister,* 75 Conn. 718, 722, 55 Atl. 561; *Gibson* v. *Dupree,* 26 Colo. App. 324, 327, 144 Pac. 1133; 39 Corpus Juris, 1285-1287.

There is no error.

In this opinion the other judges concurred.