MIMI ALTIERI *vs.* THE PEATTIE MOTORS, INCORPORATED.

MILDRED BUMSTEAD *vs.* THE PEATTIE MOTORS, INCORPORATED.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, Js.

Argued March 3d—decided May 14th, 1936.

*William B. Hennessy,* with whom, on the brief, was *John B. Greco,* for the appellants (plaintiffs).

*Thomas R. Robinson,* with whom, on the brief, was *Daniel L. O'Neill,* for the appellee (defendant).

Brown, J.  Plaintiffs in these cases, which were tried together, were injured while riding as guests in a car owned by the defendant and operated by Leo S. Perry. They can recover in this action only upon proof that their injuries were caused by the heedless and reckless disregard by the defendant, through Perry as its agent, of their rights within the meaning and intent of the so-called guest statute.  General Statutes, § 1628.

The plaintiffs offered evidence to prove and claimed to have proved these facts:  The defendant was engaged in the sale of Dodge cars and owned a Dodge sedan devoted to use by its salesmen for sales promotion, and other purposes in its business.  Perry was one of its agents, employees and salesmen, working on a commission basis with no definite hours, whose duties included selling, sales promotion, demonstra-

tion, missionary work, and prospecting, and being on the lookout for customers at all times. The defendant provided whatever car he used for this work with one of its dealer markers. Upon the invitation of the plaintiff Bumstead, on the evening of December 21st, 1934, Perry drove her, together with the plaintiff Altieri and her escort, to a social gathering at the White House Towers Inn in Cheshire. Upon receipt of the invitation on the preceding day Perry had obtained permission of the defendant to use the Dodge sedan for a demonstration to a prospect in Marion at 4 p.m. on the twenty-first. Perry made this call, then demonstrated the car to two other prospects he had not mentioned, and then took the party to the Inn. On the way he handed the plaintiff Altieri his business card and thereafter talked principally about Dodge cars. The gathering at the Inn was a good field for prospective buyers which Perry took into account in accepting the invitation, and the defendant's president was aware also that this was a promising field and would have approved of Perry's working it had he announced his intention so to do. In going there Perry intended as defendant's salesman to further its business, and only incidentally went for pleasure, and at all times was acting within the scope of his employment for the defendant. There were about seventy at the Inn and Perry's conversation with those whom he met centered largely on cars and he solicited and obtained from them the names of prospects. At about 1 a.m. on the way home, Perry, disregarding a row of lighted torches along the center of the road and a car stopped ahead in connection with a Japanese beetle quarantine, in spite of the attendant's whistle, cut to the left at high speed notwithstanding the protests of the others in the car, and crashed through the highway fence on a curve to his left side of the road at

eighty miles per hour. The plaintiffs who were riding as his guests, in consequence of this conduct in heedless and reckless disregard of their safety, were seriously injured.

The defendant offered evidence to prove and claimed to have proved these facts: Perry asked the defendant for the use of the car to call on a prospect at Marion. At the time he had formed the intention of going to the Inn but concealed this from his employer when he obtained the keys for his announced trip to Marion. In going to the Inn, Perry had no intention of furthering the defendant's business but went there on a frolic of his own and solely for pleasure. At the time of the accident Perry was driving the car without the defendant's permission and outside the scope of his employment. At the Inn he took several drinks of intoxicating liquor to which was attributable his talk about cars and his apparently talking and acting on the business of the defendant, but this was not in fact in the line of the defendant's business, and he was not acting in its interest at the time. The accident happened while Perry was driving at a reasonable speed and in a careful manner, and was caused by a car coming at high speed from the opposite direction on its wrong side of the road which forced him to the left and through the fence.

The errors relied upon by the plaintiffs which merit discussion fall under three general heads: alleged errors in the charge upon the issue of agency, improper admission of evidence of intoxication of the plaintiffs at the Inn and use thereof by the defendant's counsel in argument, and wrongful exclusion of a statement in the report filed by Perry with the motor vehicle department and offered by the plaintiffs in connection with his cross-examination. We consider these in the order stated.

As is clear from what has already been recited, one of the two principal issues with relation to liability was that of agency, and this required a determination by the jury of the issue as to whether Perry was acting as the defendant's agent at the time. The court, upon the subject of agency, to begin with charged the jury correctly as to general principles, but concluded with explicit statements applying them, certain of which were erroneous. Thus its categorical statement as to the significance of Perry's purpose in making the trip and the lack of significance of certain acts done by him looking to the sale of cars in the course of it, conflicted with what it had already correctly stated as the law relative to the effect of a mixed purpose on the agent's part and an abandonment by him, and gave a determinative effect to isolated facts which could properly be considered only as elements in the whole situation. *Ritchie* v. *Waller,* 63 Conn. 155, 161, 28 Atl. 29; *Loomis* v. *Hollister,* 75 Conn. 718, 724, 55 Atl. 561; *Butler* v. *Hyperion Theatre Co., Inc.,* 100 Conn. 551, 556, 124 Atl. 220; *Ackerson* v. *Jennings Co., Inc.,* 107 Conn. 393, 398, 140 Atl. 760. The court further erred in charging broadly that Perry's act could not bind the defendant if done in disobedience of its orders. *De Nezzo* v. *General Baking Co.,* 106 Conn. 396, 400, 138 Atl. 127; *Loomis* v. *Hollister,* supra, 723. Since the verdicts for the defendant were general, however, and the determinative issue of the heedless and reckless disregard of the plaintiffs' rights by Perry, as well as that of agency was involved, we cannot assume that the jury did not base the verdicts upon the former issue, in the submission of which no error is claimed, and these faults in the charge do not constitute reversible error. *Spring* v. *Nagle,* 104 Conn. 23, 28, 131 Atl. 744; *World Fire & Marine Ins. Co.* v. *Alliance Sandblasting Co.,* 105 Conn. 640, 646, 136 Atl. 681.

After the plaintiffs' witness Edward Curtis had testified on direct examination that, while he sat at the table with them and Perry at the Inn, Perry talked with him of prospects and cars, as evidencing the existence of the agency relationship, he was allowed on cross-examination, over the plaintiffs' objections, to testify as to the intoxicating liquor drunk there by Perry and by the plaintiffs as well. These questions were claimed specifically to develop that Perry's talk relating to the sale of cars instead of being something done to further the defendant's business, was the purposeless chatter of a drunken man. These inquiries bearing on Perry's condition were within the scope of proper cross-examination, and the extent to which the plaintiffs participated in the consumption of the liquor might have had such bearing on the amount consumed by Perry that we cannot say that the court abused its discretion in permitting inquiry as to that. The court did not err in admitting this evidence.

During his argument to the jury defendant's counsel, referring to this evidence, made the claim that in view of the indulgence in intoxicating liquor by Perry and the plaintiffs thereby disclosed, this conduct of the plaintiffs and their riding with him knowing they were menacing their own safety and that of others on the highway by so doing, was their own fault, and that the jury should consider this evidence and deal with the plaintiffs accordingly in arriving at a verdict. As the cases were tried, neither the issue of contributory negligence nor of assumption of risk was involved, and the argument directed thereto and predicated upon evidence admitted only for the limited purpose above stated was improper. While counsel for the plaintiffs objected at the time on the ground that the evidence was being misquoted and that this was not a defense, the record discloses no ruling made by the

trial court or exception noted for the plaintiffs. Counsel made no motion for a mistrial at the time as they should have done if this argument was deemed so prejudicial .as is now contended upon appeal. *Archambeault* v. *Jamelle,* 100 Conn. 690, 695, 124 Atl. 820. It does not appear that the court was requested to refer to the matter in its charge, nor was any motion made to set aside the verdict upon this ground, which is the usual procedure in seeking relief from such a claimed error in the conduct of the trial. The court plainly charged the jury that contributory negligence was not in issue, and assumption of the risk was not in the case at all or mentioned in pleadings or charge. We are unable to conclude under the circumstances that this improper argument would have been likely to mislead the jury to import this doctrine and apply it to the prejudice of the plaintiffs. The record discloses no reversible error as claimed by the plaintiffs in this connection.

The defendant by its direct examination of its witness Perry, the driver of the car, brought out that its president gave him no permission to drive it to the Inn, that when the afternoon demonstration was over, his orders were to return it, that when he took the car in the afternoon he intended "to call on Mr. White and go to White House Towers," and that he concealed this intention from the defendant's president, though he knew this involved a breach of rules. On cross-examination, for the purpose of contradicting the witness as to his answer above quoted and the possible inference favorable to the defendant therefrom that the trip to the Towers Inn was therefore a frolic of his own, the plaintiffs offered that part of Perry's report of the accident to the motor vehicle commissioner whereby it appeared that in response to the printed words "Did you operate car as owner, (employee

of owner), (friend of owner) or (relative of owner)? (Check which)," he had checked the words "employee of owner." After considerable discussion the court excluded the offer and an exception for the plaintiffs was duly noted.

One ground of objection urged by the defendant to this evidence, among others which it is not necessary to discuss, was that the writing was not contradictory as claimed. In determining whether Perry's check-mark on the report constituted a contradiction in the connection contended by the plaintiffs as above stated, the limits imposed by the specification of but the four possible categories is to be noted, requiring as it did a general characterization in a word, rather than a precise detailed statement of facts. So far as appears neither the designation of owner, friend of owner, nor relative of owner, fairly describes his relationship to the defendant. That of employee did, for it was undisputed that he had for some time been employed by the defendant as a salesman. His indication of this fact by the check-mark made, however, falls far short of constituting the contradiction which the plaintiffs claimed in offering this writing in evidence. Being an employee of the defendant as a salesman, and being engaged upon its business as the defendant's agent within the scope of his employment as such at the time, are two very different things. Perry's negation of the latter and not of the former was the significant fact here which the plaintiffs were attempting to contradict. As the defendant claimed, the writing offered did not constitute a contradiction of that, and the court properly excluded the evidence.

There is no error in either case.

In this opinion the other judges concurred.