EGIDIO RADOCCIA *vs.* THE GOODRICH OIL COMPANY.
CARRIE RADOCCIA *vs.* SAME.

JUNE 23, 1939.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Moss, J. These are two actions of the case brought by Egidio Radoccia and his wife Carrie to recover the damages resulting to them respectively from personal injuries received by her while riding as a passenger in a motor car and caused by a collision which occurred between that car and another motor car driven by an employee of the defendant corporation. In each case the plaintiff alleged in the declaration that the collision was caused by the negligent operation of the latter car by this employee.

At a jury trial of the two cases together in the superior court, more than four years after the accident, verdicts were returned in favor of the plaintiffs; and later the trial justice denied motions filed by the defendant for new trials and based on the grounds that the verdicts were against the law and that they were against the evidence. The cases are now before us on bills of exceptions by the defendant, setting forth exceptions to the denial of these motions, to the denial of motions that verdicts be directed for the defendant, to certain portions of the charge to the jury, and, in the wife's case, to the submission of certain questions to the jury for special findings. The exceptions to portions of the charge to the jury have been abandoned. The nature of the cases and the issues involved in them are such that we need to discuss only the exceptions pressed in the case of the wife.

The defendant does not contend that the plaintiff was guilty of contributory negligence. It does contend that the jury could not reasonably find that the collision was caused by the negligence of its driver, Rowan, in the operation of the automobile which he was driving at the time, about business of the defendant. But we are convinced, from an examination of the transcript of the testimony, that the jury were fully justified in so finding.

The evidence showed—and as to this there is no dispute—that this automobile was the property of Rowan's father, who had permitted him to use it for going to and returning from the defendant's place of business, or "plant."

It was also shown by the evidence, without contradiction, that at the time of the collision Rowan had left the plant for the day, to go to his home, but was carrying in the rumble seat of the automobile, for delivery first to a customer of the defendant, two cases containing six gallons of glycerine, valued at $4.20, which the customer had ordered from the defendant to be delivered to the customer at the latter's place of business. It is clear that it was a part of Rowan's duties, as an employee of the defendant, to make deliveries by automobile to its customers, when directed to do so by any one of certain representatives of the defendant at its plant. We are also convinced that the evidence on the subject was such as to support a finding by the jury that he was thus authorized to make the delivery in question in this case.

The verdict, then, was supported by the evidence, if the evidence was such that it would also support a finding that Rowan had express or implied authority from the defendant to use his father's automobile, a coupe, in making this delivery. We shall therefore first consider the evidence on this point.

The collision took place late in the afternoon on Armistice Day, Saturday, November 11, 1933. Rowan testified that one Crowley, who was the secretary of the manager of the plant, was the man from whom Rowan regularly took his orders for making deliveries; that Rowan and McConnell, another driver for the defendant, had been out that afternoon making deliveries with a small Chevrolet truck of the defendant; that he had taken McConnell home on this truck and then returned with it to the plant; that Crowley, who then seemed to be in charge, told him to make the delivery of the two cases of glycerine; that he, Rowan, put the cases

in the truck, but found that its lights were not working; that he reported this to Crowley; that there was no other truck to use; and that Crowley told him that the customer wanted this glycerine and "wanted it bad", and to make the delivery in his own car on his way home, which Rowan proceeded to do.

McConnell, who testified for the defendant, told much the same story, except that he said that Rowan took him home in the coupe when Rowan started out to make the delivery of the glycerine, and that he said also that he didn't think Crowley was there. He testified that when Rowan and he had got back from making deliveries with the Chevrolet truck, a short time before, he found that the lights were not working; and that a man by the name of Koehler, who had general charge of deliveries, said that there was a new order for glycerine that should go out and gave him the slip for the delivery.

McConnell further testified that there were then in the back of the plant two very large General Motors tank trucks, of a kind that he had never driven and which therefore he decided not to use; that he then came back to the office but did not tell Koehler *because he was not there*; that he thought a Mr. Fancutt, assistant to the office manager, was there checking in some driver and that Rowan and his brother, who was also employed by the defendant, were there; that the brother said that the glycerine had to go out; that Rowan said he would rather take his own car and that he didn't think that Rowan asked anybody's permission; that he didn't think that Crowley had been at the plant since morning; and that the glycerine was put into the coupe and Rowan drove off with it, taking him along as far as his home.

Fancutt, a witness for the defendant, said that Crowley, if at the plant, would despatch the deliveries of fuel oil and glycerine, according to outlines that Koehler had made for

him, and would give orders for deliveries without having to call up anybody else; that Koehler, Crowley and he alternated on Saturday afternoons at the plant; that that Saturday was Koehler's; that Crowley had that day off and he was pretty sure that Crowley wasn't there; that he himself stayed around that afternoon until about 4:30 or 5 o'clock; that just before that time two drivers came in and he checked them in, and another man and Rowan came in from the back where the trucks were kept and told Koehler that the lights were out of commission and talked about "this glycerine that had to go out"; and that he thought that Koehler told them to take it out in one of the other trucks.

He also testified, on cross-examination, that at that time Koehler was busy working on a large report, which was sent daily to New Haven, and had been busy at that right along; that he didn't know who checked in the slips for McConnell and Rowan; that he didn't see Koehler check anything; that he heard McConnell say that there were trucks there bigger than any he had ever driven, but he didn't hear McConnell or Rowan say that they wouldn't drive one of the big trucks; and that two cases of glycerine would not ordinarily be sent out in one of the big trucks.

Crowley testified, in behalf of the defendant, that he "was very close to the manager"; that Koehler handled trucks and saw that orders were delivered; that he himself on the day of the accident didn't give to Rowan or McConnell any order to deliver glycerine; that November 11 was his birthday and he would imagine that he would want that afternoon and night off and he would have gone to Goodrich or Fancutt to get the afternoon off; and that he didn't recollect being around the office at four or five o'clock on that day. On cross-examination he said: "All I can say is I don't remember working that afternoon." On redirect examination he testified that he never came in contact with these drivers; that they just passed by his desk.

In considering Crowley's testimony as to how little he had to do with the drivers and the sending out of orders, Fancutt's testimony, as above summarized, should be kept in mind; and as to all the testimony it should be kept in mind that the accident occurred more than four years before the trial.

Koehler testified for the defendant that he just used the defendant's equipment; that nothing was said about outside equipment; that, besides the big trucks, there were at the plant the Chevrolet and a Pierce-Arrow truck of about the same weight; that McConnell and Rowan complained about the lights not working and he told them to take the Pierce-Arrow truck, which was out in the shed as a spare truck, and to use that for the delivery of the glycerine, as to which there was no particular rush; that it was not customary to take men off their own trucks; that Crowley was not around there; and that Fancutt was there, and also, besides McConnell and Rowan, two drivers who had just come in but were not used to deliver the glycerine, as they had their own deliveries, their own particular line, which was the gasoline line. On cross-examination he testified that it was then only 4:30 in the afternoon, which was early for them to get off. He added that McConnell and Rowan went out as if to get the truck and that was the last he saw of them.

In answering questions submitted to them for special findings, the jury found that some one was in charge of the office of the defendant from the time defective lights on the truck were reported until Rowan left the defendant's premises with the glycerine; that it was Koehler and Crowley; that Koehler ordered Rowan to use the Pierce-Arrow truck to deliver the glycerine; that Crowley told Rowan to use his father's Ford coupe to make the delivery; that Rowan chose to use the coupe for that purpose; that such choice was known to Koehler or to Crowley; but that such choice was not solely for Rowan's convenience.

The defendant's counsel contend that some of these findings are inconsistent, but we cannot see that there is any real inconsistency, when they are read in connection with the evidence, as above summarized. The jury, in weighing and comparing the testimony of the different witnesses may properly have come to the conclusion that Koehler was present at, and in charge of, the defendant's office for a short time after the Chevrolet truck was brought back and its lights were reported to be defective and that he ordered Rowan to use the defendant's Pierce-Arrow truck to deliver the glycerine; that soon afterwards Crowley came in and took charge of deliveries, Fancutt having meantime gone away and Koehler having either gone away or having shut himself up in his office to work on his report, as indicated in testimony by Fancutt, above summarized.

In our judgment the jury could therefore have also properly found from the evidence that Koehler, before he thus departed, or retired to work on his report, had ordered Rowan to use the Pierce-Arrow truck to deliver the glycerine; but that Crowley, after taking charge of deliveries, was informed that the Pierce-Arrow truck was not available and that McConnell and Rowan were not experienced in driving the big trucks, which were not suitable, anyway, and that the delivery of the glycerine was an urgent matter and that the Ford coupe was available and suitable for the purpose; and that he therefore took the responsibility of directing Rowan to use that car for making the delivery. Therefore we are of the opinion that there was no inconsistency in the jury's special findings and that there was no prejudicial error by the trial justice in submitting to the jury, in the form in which they were submitted, the requests for special findings.

We are also of the opinion that we cannot properly say that these findings were clearly not supported by the preponderance of the evidence. In view of these findings, we

cannot properly conclude that the general verdict of the jury was clearly not supported by the greater weight of the evidence, unless we are of the opinion that a finding by the jury that it was within the authority of Crowley to tell Rowan to use his father's coupe in delivering the gasoline would clearly not be supported by a preponderance of the evidence.

There was no evidence that Crowley was expressly authorized to give such a direction, and therefore the vital question remaining for decision is whether a finding by the jury that Crowley had *implied* authority from the defendant to give such a direction should be held by us to be wrong.

The trial justice, after what appears to have been a careful consideration of the evidence in the light of the applicable rules of law, refused to set aside the verdict for the plaintiff. He had instructed the jury that if they found that Rowan's car was a reasonable means of conveyance, in view of all the circumstances, and that some person in authority in the office of the defendant told Rowan to use his own car and if they found that this order was a reasonable one, they could find that Rowan's use of his own car to deliver the order was within the scope of his employment.

As no exception to this statement of the rule of law applicable to this feature of the case has been relied on before us, we must accept it as a correct statement for the purposes of this case. Therefore, and in view of what we have said *supra,* we should not sustain the defendant's exception to the denial of its motion for a new trial, unless we are convinced that the evidence would not support a finding by the jury that under the circumstances a direction by Crowley to Rowan to use the coupe for making the delivery was within the implied authority of Crowley at the time, in supervising deliveries for the defendant.

Under exceptional circumstances, when something in the general nature of an emergency exists, an employee, who is

for the time being in charge for the employer of some part of the employer's business and who ordinarily would have no authority to drive in that business a car of the employer or to authorize a subordinate employee to use in that business a car belonging to himself, may have implied authority, in dealing with the unusual and unforeseen situation, to do either of these things.

The evidence may be such as to make it a question, for determination by a jury, whether such a situation existed in a particular case. *Stuart* v. *Doyle,* 95 Conn. 732, 112 A. 653; *De Nezzo* v. *General Baking Co.,* 106 Conn. 396, 138 A. 127; *Cumming* v. *Automobile Crank Shaft Corp.,* 232 Mich. 158, 205 N. W. 133. See also *Adams Express Co.* v. *Lansburgh & Bro.,* 49 App. D. C. 144, 262 Fed. 232; *Kennedy* v. *Union Charcoal etc. Co.,* 156 Tenn. 666, 4 S. W. (2d) 354. The defendant's counsel rely strongly on the opinion of this court in *Haining* v. *Turner Centre System,* 50 R. I. 481, 149 A. 376, but in our judgment that case is easily distinguishable on its facts from the instant case and the opinion is in no way inconsistent with the rule of law just above stated.

Here the evidence would, in our judgment, fairly support findings by the jury that Koehler, when in charge of deliveries late in the afternoon, had ordered McConnell and Rowan to use the Pierce-Arrow truck in delivering the glycerine; that later Crowley had succeeded Koehler in charge of deliveries and had learned that that comparatively light truck was not available, but only very heavy tank trucks, which were not suitable for such a delivery and as to which McConnell and Rowan were not experienced; that he also learned that it was rather important that the delivery should be made that afternoon and that Rowan would soon be starting for home in his father's coupe; that, therefore, exercising his judgment as to the best way of dealing with the situation in the interest of the defendant, he had told Rowan

to use his father's car in making this delivery, when going home; and that under the special circumstances he had implied authority from the defendant to give this instruction and Rowan had implied authority to act in accordance with it.

Therefore we are of the opinion that the trial justice was not in error in denying the defendant's motion for a new trial. From this conclusion it follows, even more clearly, that he did not err in denying the defendant's motion that the jury be directed to return a verdict for the defendant. The reasons for these conclusions apply with equal force in the husband's case.

In each of these cases, all the defendant's exceptions are overruled and the case is remitted to the superior court for entry of judgment on the verdict.

*Godfrey & Cambio, Gerald L. Bronstein,* for plaintiffs.

*Heltzen & Connolly, James G. Connolly,* for defendant.