355 So.2d 1181 (1977)
COLONIAL STORES, INC., a Foreign Corporation, Doing Business As Big Star Food Stores and Clyde D. Carter, Petitioners,
v.
Doyle Wayne SCARBROUGH, Respondent.
No. 50723.
Supreme Court of Florida.
December 8, 1977.
As Corrected On Denial of Rehearing February 27, 1978.
*1182 George L. Hudspeth and James A. Bledsoe, Jr. of Mahoney, Hadlow & Adams, Jacksonville, for petitioners.
Law Offices of Stephen H. Davis, and Richard G. Rumrell, Jacksonville, and Gerald B. Curington of Smathers & Thompson, Miami, for respondent.
*1183 SUNDBERG, Justice.
This cause is before us on petition for writ of certiorari to review the decision of the District Court of Appeal, First District, reported at 338 So.2d 1119, which is alleged to be in conflict with McKinney v. Dade County, 341 So.2d 1061 (Fla. 3d DCA 1977), on the issue of whether the filing of an information by the state attorney in a criminal prosecution raises, in a subsequent malicious prosecution action based upon that criminal proceeding, a presumption of probable cause to believe that the criminal defendant was guilty of the offense charged. We have jurisdiction pursuant to Article V, Section 3(b)(3), Florida Constitution.
Respondent, Doyle Wayne Scarbrough, filed a two-count complaint against petitioners, Colonial Stores, Inc. and Clyde D. Carter, seeking damages for false imprisonment and malicious prosecution after he was arrested and jailed without bond for the robbery of a Big Star Food Store. Petitioner Clyde D. Carter, the store manager for Big Star Food Store, was one of the two witnesses present during the robbery and allegedly observed the physical characteristics of the robber. Carter had noticed the robber earlier that day when the bandit requested that Carter change a one-hundred-dollar bill for a nearby store, All Jax Auto Parts. Immediately after the robbery, Carter telephoned the police to report the crime. A patrolman arrived at the store in response to the call and, from his interview with the two eye witnesses, prepared a description report. The next morning the City of Jacksonville police received a telephone call from an unidentified caller who stated that the automobile and the individual involved in the robbery were traveling on a particular city street. Respondent asserts that this call was made by Carter. A "be on the look out" was issued for a suspect traveling in a 1955 Ford having a Texas license tag. Later that day the automobile was apprehended by officers of the Jacksonville Beach police department, and the occupant, respondent Scarbrough, was held. The respondent was later arrested without a warrant based upon the description report which described the armed robber in general terms, and the anonymous telephone call.
Earlier that day, Carter visited All Jax Auto Parts to ask whether an employee had been sent to Big Star Food Store to obtain change. Respondent asserts that during this episode Carter described the suspect to an All Jax Auto Parts employee. Carter's assistant manager was later informed that the description was that of one Joseph Tanner, a longtime friend of the All Jax Auto Parts owner. An affidavit was executed by the police and a lineup was thereafter held in which both eye witnesses identified respondent. Based on this affidavit, the state attorney filed a direct information against respondent. Approximately two months thereafter, Joseph Tanner confessed to the robbery. This confession led to a nolle prosequi of respondent's case. Scarbrough was incarcerated continuously from the time of his arrest until the charge was nolle prossed. Incarceration apparently contributed to respondent's unstable personality. He became severely depressed, lost touch with his family while in prison, and eventually tried to commit suicide after his release.
Respondent brought suit for false imprisonment and malicious prosecution. After the trial court's denial of petitioners' motion for a directed verdict with respect to both the false imprisonment and malicious prosecution counts the case went to the jury. The trial court instructed the jury that the filing of an information against respondent gave rise to a presumption of probable cause. The jury returned a general verdict in favor of respondent and a final judgment was entered by the court.
Petitioners appealed to the District Court of Appeal, First District, arguing that the trial court erred in failing to direct a verdict in their favor with respect to the malicious prosecution count in that the state attorney's filing of an information against respondent created a presumption of probable cause to which the trial court failed to accord proper effect. The district court disagreed, holding that no presumption of *1184 probable cause arose from the filing of an information. The court accepted respondent's argument on cross-appeal, that the trial court erred in charging the jury that the filing of an information against him gave rise to a presumption of probable cause. However, the district court failed to find reversible error as to respondent on this ground. With respect to petitioners, the court held that as the jury charge was in petitioners' favor, it merely constituted harmless error.
Although the jury was charged separately as to the malicious prosecution and the false imprisonment counts, it returned a general verdict for respondent. Consequently, it was impossible to determine the count(s) upon which the judgment was based. Petitioners contended that under the circumstances if there were error as to either count the district court should overturn the judgment, as the jury may have based its verdict on the faulty count. The district court rejected this contention, holding that as the judgment could be sustained on sufficient evidence of malicious prosecution, it would affirm the judgment without deciding the sufficiency of evidence to sustain the false imprisonment count.
For the reasons hereinafter enunciated, we hereby approve the district court's decision.
In support of their argument on appeal that a presumption of probable cause should have arisen from the state attorney's decision to prosecute respondent Scarbrough, petitioners relied upon this Court's decision in Gallucci v. Milavic, 100 So.2d 375 (Fla. 1958). In Gallucci, we held that in a malicious prosecution suit a presumption arises from a magistrate's finding of probable cause which is conclusive, absent fraud or other corrupt means employed by the person initiating the prosecution. However, the district court declined to accord the Gallucci presumption to a prosecutor's decision. In so doing, the district court distinguished Ward v. Allen, 152 Fla. 82, 11 So.2d 193 (1942), and Meade v. Super Test Sales, Inc., 306 So.2d 211 (Fla. 2d DCA 1975). The Meade court merely found that there was reasonable cause for the state attorney's decision to prosecute. Similarly, Ward v. Allen held that the filing of an information constitutes evidence tending to show grounds for prosecution, but it did not give such evidence a presumptive effect.
Subsequent to rendition of the district court's opinion in the case at bar, the District Court of Appeal, Third District, decided the case of McKinney v. Dade County, supra, upon which conflict herein is based. There, the district court held that when a prosecuting attorney files an information against a defendant, he conclusively determines that the evidence is adequate to establish probable cause. Accordingly, the district court affirmed a trial court's entry of summary judgment in favor of the defendant in a malicious prosecution suit, on the issue of liability. The McKinney court relied upon this Court's decision in State ex rel. Hardy v. Blount, 261 So.2d 172 (Fla. 1972), which held that the finding of probable cause by a state attorney, evinced by the filing of an information, has the same practical effect as an identical finding by a magistrate. This is so because in either case the determination has been made by a constitutional officer. Article V, Sections 5, 6, and 17, Florida Constitution. Hardy, however, fails to constitute a valid basis for petitioners' position in the present case for two reasons: First, in Gerstein v. Pugh, 420 U.S. 103, 106, 116-117, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), the United States Supreme Court overturned Hardy, refusing to find the prosecutor's filing of an information to be the constitutional equivalent of a magistrate's finding of probable cause. Second, Hardy is factually distinguishable from the case at bar because it involved the right of a pre-trial detainee, arrested without a warrant and charged by information, to a judicial probable cause determination. For the policy reasons enunciated in Gerstein, we decline to accord to a prosecutor's decision the presumptive effect in a malicious prosecution action proposed by petitioners.
In Gerstein, the Supreme Court noted that "a prosecutor's responsibility to law *1185 enforcement is inconsistent with the constitutional role of a neutral and detached magistrate." Id. at 117, 95 S.Ct. at 865, citing Coolidge v. New Hampshire, 403 U.S. 443, 449-453, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Accord, Shadwick v. City of Tampa, 407 U.S. 345, 92 S.Ct. 2119, 32 L.Ed.2d 783 (1972). The reason for this separation of functions was expressed by Mr. Justice Frankfurter:
Zeal in tracking down crime is not in itself assurance of soberness of judgment... . The awful instruments of the criminal law cannot be entrusted to a single functionary. The complicated process of criminal justice is ... divided into different parts, responsibility for which is separately vested in the various participants upon whom the criminal law relies for its vindication.

McNabb v. United States, 318 U.S. 332, 343, 63 S.Ct. 608, 614, 87 L.Ed. 819 (1943).
Our holding today does not constitute a degradation of the role of the prosecutor, but rather is a recognition of the proper function of this executive official in our criminal justice system. The prosecutor's ultimate duty is to vindicate the State's interest in enforcing its criminal laws. In contrast, the magistrate's role, as a member of the judiciary, is to remain wholly disinterested  to "see both sides of the case," with bias toward neither.
It has been argued that this Court's failure to extend the Gallucci presumption to a state attorney's decision to prosecute will have a chilling effect on law enforcement efforts. It is theorized that citizens will be reluctant to report crimes absent the "protection" of a presumption of probable cause, because of fear that they may thereafter become a defendant in a malicious prosecution action. We find this argument untenable. Prior to rendition of the district court's decision in McKinney v. Dade County, supra, in February, 1977, this State's decisional authority accorded no presumptive effect in a malicious prosecution action to a prosecutor's filing of an information. This presumption applied solely to a judicial determination of probable cause. See Goldstein v. Sabella, 88 So.2d 910 (Fla. 1956); Ward v. Allen, supra; Thompson v. Taylor, 183 So.2d 16 (Fla. 1st DCA 1966).
It has neither been argued nor shown that these decisions resulted in the threatened "chilling effect" upon the reporting of crimes by citizens. In addition, a cause of action for malicious prosecution is not sustainable solely upon a showing of lack of probable cause; malice must also be established. Gallucci v. Milavic, supra; Duval Jewelry Co. v. Smith, 102 Fla. 717, 136 So. 878 (1931); Tatum Brothers Real Estate & Investment Co. v. Watson, 92 Fla. 278, 109 So.2d 623 (1926). It is recognized that malice may be inferred from the absence of probable cause. Adams v. Whitfield, 290 So.2d 49 (Fla. 1974); Duval Jewelry Co. v. Smith, supra. However, malice is not legally synonymous with the absence of probable cause. White v. Miami Home Milk Producers Association, 143 Fla. 518, 197 So. 125 (1940). The inference of malice from the absence of probable cause is not one of law but merely a presumption of fact which may be rebutted. This is an inference which the jury is not required to draw, and which it should not draw if other facts disclosed by the evidence lead to a different conclusion. See Tatum Brothers Real Estate & Investment Co. v. Watson, supra.
Therefore, we affirm the district court's holding in the instant case that, in a malicious prosecution action, no presumption of probable cause arises from the filing of an information with respect to the charge upon which such action is based. We adhere to our earlier declaration in Ward v. Allen, supra, that the filing of an information merely constitutes evidence of reasonable grounds for the prosecution.
Petitioners contend that the district court erred in affirming the trial court's judgment based solely upon its determination that the evidence was sufficient to sustain the verdict on the malicious prosecution count. In the trial court, the jury received separate instructions with respect to the false imprisonment and malicious prosecution counts. However, petitioners failed to request a special verdict as to each *1186 count and to object to submission of a general verdict to the jury. The jury thereafter returned a general verdict in favor of respondent Scarbrough. This raises an issue with respect to which authorities among different jurisdictions are divided. The question arises where two or more issues are left to the jury, and of which may be determinative of the case, and a general verdict is returned, making it impossible to ascertain the issue(s) upon which the verdict was founded. One line of authority holds that reversal is improper where no error is found as to one of the issues, as the appellant is unable to establish that he has been prejudiced. Berger v. Southern Pacific Co., 144 Cal. App.2d 1, 300 P.2d 170 (Cal. 1st DCA 1956); Altieri v. Peattie Motors, Inc., 121 Conn. 316, 185 A. 75 (1936); Knisely v. Community Traction Co., 125 Ohio St. 131, 180 N.E. 654 (1932); Dwyer v. Christensen, 77 S.D. 381, 92 N.W.2d 199 (1958). This is known in jurisprudence as the "two issue" rule. It is a rule of policy, designed to simplify the work of the trial courts and to limit the scope of proceedings on review. See Harper v. Henry, 110 Ohio App. 233, 169 N.E.2d 20 (Ct.App. 1959).
The weight of authority to the contrary mandates a reversal where error has affected one issue unless it is clear that the complaining party has not been injured thereby. Sunkist Growers, Inc. v. Winckler & Smith Citrus Products Co., 370 U.S. 19, 82 S.Ct. 1130, 8 L.Ed.2d 305 (1962); State of Maryland v. Baldwin, 112 U.S. 490, 5 S.Ct. 278, 28 L.Ed. 822 (1884); Maccia v. Tynes, 39 N.J. Super. 1, 120 A.2d 263 (N.J.App. 1956); Bredouw v. Jones, 431 P.2d 413 (Okl. 1966).
We believe that the "two issue" rule represents the better view. At first thought, it may seem that injustice might result in some cases from adoption of this rule. It should be remembered, however, that the remedy is always in the hands of counsel. Counsel may simply request a special verdict as to each count in the case. See Harper v. Henry, supra. Then, there will be no question with respect to the jury's conclusion as to each. If the trial court fails to submit such verdicts to the jury, counsel may raise an appropriate objection.
Had petitioners in the instant case requested special verdicts and objected to submission of a general verdict form to the jury, it would have been necessary for the district court to determine the sufficiency of the evidence to sustain the false imprisonment count as well as the malicious prosecution count. If there was error as to either count, the district court should then remand the case for a new trial as to both counts. However, petitioners failed to meet these requirements. Where the district court determines under these circumstances that one of the issues submitted to the jury was free from prejudicial error, it will be presumed that all issues were decided in favor of the prevailing party and the judgment will be affirmed. See Larriva v. Widmer, 101 Ariz. 1, 415 P.2d 424 (1966).
Consequently, the district court properly held that as the judgment in favor of respondent was sustainable on sufficient evidence of malicious prosecution, the judgment should be affirmed without deciding the sufficiency of evidence to sustain the false imprisonment count.
The decision of the District Court of Appeal, First District, is approved, and the writ of certiorari is discharged.
It is so ordered.
OVERTON, C.J., and ADKINS, BOYD and HATCHETT, JJ., concur.