491 So.2d 1120 (1986)
Willie Lee MURRAY, Petitioner,
v.
STATE of Florida, Respondent.
No. 67414.
Supreme Court of Florida.
July 17, 1986.
*1121 Richard L. Jorandby, Public Defender, and Louis G. Carres, Asst. Public Defender, Fifteenth Judicial Circuit, West Palm Beach, for petitioner.
Jim Smith, Atty. Gen. and Penny H. Brill, Asst. Atty. Gen., West Palm Beach, for respondent.
ADKINS, Justice.
We have for review the Fourth District's opinion of Murray v. State, 471 So.2d 70 (Fla. 4th DCA 1984), as modified after rehearing. We find jurisdiction based on conflict, article V, section 3(b)(3), Florida Constitution, and affirm in part and quash in part the decision under review.
The prosecution below stemmed from certain events of January 19, 1983, beginning with the abduction of a young woman at gunpoint from a Pompano Beach carwash by Murray and a cohort. After the two men forced the victim to drive away with them in her car, Murray drove while his companion pointed the gun, threatened the victim's life, and went through her purse for money. Murray parked the car, now in Deerfield Beach, and the two men sexually assaulted the victim. The two men took the necklace she was wearing and drove the victim to a nearby wooded area.
After throwing the victim a sweater, Murray walked with her away from the car, swinging the pistol he was then carrying in his right hand. Putting his left arm around the victim's shoulders, he kissed her on the mouth and said goodbye. As she began to walk away, Murray shot her through the back of the head, perforating her right eye and severely impairing the sight in her left. The victim is now legally blind.
Petitioner was arrested within hours and charged with kidnapping, two counts of sexual battery, armed robbery, and attempted first-degree murder. A jury subsequently convicted him on five counts: kidnapping without a firearm, two counts of sexual battery with a firearm, robbery with a firearm, and attempted manslaughter with a firearm. The trial court, entering judgment accordingly, sentenced petitioner to 100 years imprisonment on each of the first four counts and 15 years on the fifth, all to run consecutively, and imposed three year mandatory minimum sentences under section 775.087(2), Florida Statutes (1983), for those crimes involving a firearm. The trial court additionally retained jurisdiction over parole, under section 947.16(3)(a), Florida Statutes (1983), for thirty years of the first sexual battery sentence.
Upon review, the Fourth District affirmed in part and reversed in part the judgment and sentence. First, it reversed the conviction of attempted manslaughter on the authority of Taylor v. State, 444 So.2d 931 (Fla. 1983), and Achin v. State, 436 So.2d 30 (Fla. 1982), and remanded for a new trial on that charge. In Taylor, we held that a conviction of attempted manslaughter must be based upon a showing of an act or procurement, rather than mere culpable negligence. Because Murray consistently contended at trial he had not intended to shoot the victim, and the jury had in fact not returned the requested attempted first-degree murder verdict, the district court reasoned that the defendant may *1122 have been convicted of a nonexistent crime, in violation of Achin.
Upon rehearing, however, the district court withdrew this portion of its opinion, holding that the issue of the flawed jury instruction had not been properly preserved as required by our decision of Tillman v. State, 471 So.2d 32 (Fla. 1985). Accordingly, the court affirmed the sentence and mandatory minimum imposed on the attempted manslaughter conviction.
The Fourth District additionally evaluated the propriety of the trial court's imposition of consecutive three-year mandatory minimums on the two sexual batteries, the robbery, and the manslaughter counts in light of Palmer v. State, 438 So.2d 1 (Fla. 1983). In Palmer, we found impermissible the consecutive imposition of multiple mandatory minimums for a number of separate offenses arising from a single criminal episode. The district court below, finding that the sexual batteries "occurred at the same place as the result of a continuing unit of criminal activity," 471 So.2d at 72, required the two mandatory minimums imposed by the trial court therefor to be served concurrently.
In contrast, the district court found the robberies sufficiently separate from the sexual batteries to uphold the mandatory minimum on the former. Upon rehearing, too, the court affirmed the imposition of the mandatory minimum on the attempted manslaughter conviction. Finally, the district court affirmed the trial court's retention of jurisdiction over the first sexual battery conviction.
Murray attacks the district court's decision, as modified upon rehearing, on a number of grounds. First, he challenges the Fourth District's affirmance of the conviction of and sentence for attempted manslaughter. We find no error in the conviction. In this case, as in Tillman, a pre-Taylor jury was instructed that attempted manslaughter could be based on culpable negligence as well as an act or procurement. As in this case, Tillman contended that a new trial was required, as "it is unclear whether the jury found its verdict on the ground of an act or procurement on the one hand or culpable negligence on the other." 471 So.2d at 34. We rejected this contention for two reasons, each of which applies in full force to the instant case.
First, the issue of the jury instructions had not been properly preserved for appeal through specific objection below. Id. at 35, citing Steinhorst v. State, 412 So.2d 332 (Fla. 1982). Second, and equally fundamental, a review of the record disclosed ample and sufficient evidence to support the conclusion that the shooting of the victim "was the result of an act of petitioner done with the requisite criminal intent and was not mere culpable negligence." 471 So.2d at 35.
Murray miscontrues Florida law in citing Achin for the proposition that the erroneous jury instruction, coupled with the verdict returned, create an intolerable risk that he has been convicted of a nonexistent crime. Unlike the "attempted extortion" conviction in that case, attempted manslaughter has long been recognized by Florida's courts. Taylor; Williams v. State, 41 Fla. 295, 26 So. 184 (1899); Rodriguez v. State, 443 So.2d 286 (Fla. 3d DCA 1983).
We held in Taylor that the crime logically exists "in situations where, if death had resulted, the defendant could have been found guilty of voluntary manslaughter." 444 So.2d at 934. Subsequently, in Brown v. State, 455 So.2d 382 (Fla. 1984), we scrutinized the evidence underlying a verdict of attempted manslaughter in order to ensure that the verdict was supported by sufficient evidence of an intention to commit the criminal act in question. Similar scrutiny in this case compels us, as in Brown, to uphold the verdict and affirm the conviction.
A jury verdict is not to be overturned if supported by substantial and competent evidence, Hitchcock v. State, 413 So.2d 741 (Fla.), cert. denied, 459 U.S. 960, 103 S.Ct. 274, 74 L.Ed.2d 213 (1982); Skinner v. State, 468 So.2d 271 (Fla. 2d DCA 1985), and as the jurors below "performed their *1123 duty faithfully and honestly and have reached a reasonable conclusion, more than a difference of opinion as to what the evidence shows is required for this Court to reverse them." Hitchcock, 413 So.2d at 745.
We find the conviction amply supported by reasonable inferences to be drawn from the evidence. Frankly, we find Murray's purported lack of intent to shoot the victim inconsistent with his admitted intent to kidnap, rob, and sexually batter her. At any rate, evidence presented by the state as to the force necessary to squeeze the trigger on the gun, the safety bar on the pistol, and Murray's original statement to police indicating not that he had accidentally shot the victim, but that his co-defendant had done the act, painted a picture of intent which the jury could well have reasonably accepted in returning its verdict.
We must, however, quash the opinion under review in part. We find no authority allowing application of a mandatory minimum sentence to the conviction for attempted manslaughter. The authorizing statute, section 775.087(2), Florida Statutes (1983), applies to, inter alia, convictions of "[a]ny murder." Manslaughter, as defined by section 782.07, Florida Statutes (1983), involves "[t]he killing of a human being ... in cases in which such killing shall not be excusable homicide or murder ..." We therefore agree with those decisions finding no basis for application of the mandatory minimums to manslaughter convictions. Strahorn v. State, 436 So.2d 447 (Fla. 2d DCA 1983); Jones v. State, 356 So.2d 4 (Fla. 4th DCA 1977).
Petitioner next contends that the district court misapplied our decision of Palmer v. State, 438 So.2d 1 (Fla. 1983), in imposing consecutive mandatory minimums for a number of offenses arising from the same criminal episode. We disagree. In Palmer, we found error in the trial court's imposition of consecutive mandatory minimums for each of thirteen robbery counts, totalling thirty-nine years, when the robberies had taken place in the same manner at one place and time. Even in Palmer, however, we noted that the language of section 775.021(4), Florida Statutes (1981), granted the trial court discretion to impose separate sentences, either concurrently or consecutively, for each separate criminal offense arising out of a single criminal episode. See § 775.021(4), Fla. Stat. (1983). We additionally noted that "nor do we prohibit [by this holding] consecutive mandatory minimum sentences for offenses arising from separate incidents occurring at separate times and places." 438 So.2d at 4.
The district court below properly found the sexual batteries to have occurred at the same time and place, and thus properly required the two mandatory minimums imposed therefor to be served concurrently. Our analysis, therefore, must focus upon the propriety of the mandatory minimums imposed on the single sexual battery and the armed robbery charges. We find proper the district's imposition of the two consecutive sentences in this case in spite of their common root in a single criminal episode. The court reasoned as follows:
Whether the robbery conviction was a separate incident is a more difficult question, as the items were taken at different times. The money was stolen as the two men transported the victim from the scene of the abduction, the necklace after the batteries, and the car after the sexual batteries and movement to another area. It would appear that the robbery with respect to the money taken while the victim was held at gunpoint in her car and the theft of the car after the sexual batteries in a different location are separate criminal incidents. See Wilson v. State, 449 So.2d 822 (Fla. 1st DCA 1984) (on rehearing); Whitehead v. State, 446 So.2d 194 (Fla. 4th DCA 1984). The necklace was taken at the same place and at a closer time proximity to the sexual batteries, making it less separable from the batteries. Taken as a whole, we view the robberies as having been a separate criminal unit of activity that primarily did not take place at the same time and locale as the sexual batteries. *1124 Correctly, then, while the trial court could assess only concurrent mandatory minimums for the sexual batteries, it properly required an additional three years for the armed robbery.
471 So.2d at 72-73.
Unlike in State v. Ames, 467 So.2d 994 (Fla. 1985), we find the sexual battery of the victim sufficiently separate in nature, time, and place from the armed robbery charge to justify application of the consecutive mandatory minimums. While the entire event could be labeled a "single criminal episode," the sexual battery occurred in one place and constituted one invasion of the victim, while the robberies committed under the threat of gunpoint occurred in other places and represented a separate and additional violation of the victim's most basic rights. The nature of these crimes and the manner of their commission justified the Fourth District's holding in this regard. State v. Thomas, 487 So.2d 1043 (Fla. 1986); Smith v. State, 487 So.2d 1088 (Fla. 5th DCA 1986); James v. State, 462 So.2d 858 (Fla. 2d DCA 1985).
Finally, Murray contends that the trial court's retention of jurisdiction over parole must be vacated in light of the trial court's failure to "state the justification [therefor] with individual particularity." § 947.16(3)(a), Fla. Stat. (1983). We reject this contention. The trial court expressed at sentencing its intention to retain jurisdiction, stating that "the facts speak for themselves," and allowed the defense to object and present any desired information in mitigation. The judge subsequently placed in the record a written order detailing the heinous nature of the crime and stating that "it is in the best interest of society and the public that the Defendant remain incarcerated for a minimum of thirty (30) years on the sentence imposed, on Count II."
Unlike the situation in Mobley v. State, 409 So.2d 1031 (Fla. 1982), we need not remand for findings of fact justifying the retention of jurisdiction, as the findings have become part of the record. More importantly, the defendant has had an opportunity to respond to the court's action, Stafford v. State, 440 So.2d 55 (Fla. 4th DCA 1983), and the trial court's statement of the brutal facts of this crime lays out quite clearly the basis for retention of jurisdiction. The basis is therefore far from "vague and subjective." Robinson v. State, 458 So.2d 1132, 1134 (Fla. 4th DCA 1984). Further, we find such animalistic criminality a proper basis for retention of jurisdiction. See Snow v. State, 464 So.2d 1313 (Fla. 1st DCA 1985).
We therefore quash the opinion below in part, affirm in part, and remand to the district court with instructions to remand to the trial court for further proceedings consistent with this opinion.
It is so ordered.
McDONALD, C.J., and BOYD, OVERTON, EHRLICH, SHAW and BARKETT, JJ., concur.