633 So.2d 72 (1994)
Thomas Martin PARKER, Appellant,
v.
STATE of Florida, Appellee.
No. 93-644.
District Court of Appeal of Florida, First District.
February 18, 1994.
Rehearing Denied March 31, 1994.
Nancy A. Daniels, Public Defender and Paula S. Saunders, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Edward C. Hill, Asst. Atty. Gen., Tallahassee, for appellee.
ZEHMER, Chief Judge.
This is a criminal appeal from the trial court's imposition of consecutive minimum mandatory sentences, imposed pursuant to section 775.084, Florida Statutes. Parker argues that the trial court erred in stacking the minimum mandatory sentences under the habitual violent felony offender portion of the statute, citing to Daniels v. State, 595 So.2d 952 (Fla. 1992), and Palmer v. State, 438 So.2d 1 (Fla. 1983).[1] For the following reasons, we affirm.
Parker was charged in a single information with attempted first degree murder, sexual battery by the threat of force or violence likely to cause serious personal injury, kidnapping, arson of a dwelling while in the commission of a felony, burglary of a dwelling, and robbery. All of the above offenses occurred on August 14, 1992. The state also filed a notice of intent to seek habitual violent *73 felony offender sanctions. On January 19, 1993, Parker entered a plea of no contest to all six counts. The court accepted the plea and continued the case for sentencing.
At the sentencing hearing, the state introduced evidence establishing that Parker qualified for habitual violent felony offender (HVFO) sentencing. Accordingly, the court adjudicated Parker guilty and sentenced him as an HVFO to concurrent terms of life in prison on the counts charging attempted first degree murder and arson, along with concurrent minimum mandatory terms of 15 years imposed pursuant to subsection 775.084(4)(b). The court next sentenced Parker to life in prison as an HVFO on the counts charging sexual battery, kidnapping, and burglary. These sentences were to run concurrently with each other but consecutively to the life sentences imposed for the counts charging attempted first degree murder and arson. In addition, as to each, the court imposed 15-year minimum mandatory terms. Finally, on the count charging robbery, the court imposed only the HVFO minimum mandatory sentence of 10 years to run concurrently with the life sentences imposed for the sexual battery, kidnapping, and burglary charges, but consecutively to the sentences imposed for attempted murder and arson. As a result of the foregoing sentencing scheme, Parker received minimum mandatory sentences totalling 30 years.
On appeal, Parker contends that the decisions in Palmer and Daniels preclude the court's stacking of the minimum mandatory sentences described above because each of the offenses arose out of a single criminal episode. In opposition, the state argues that this issue is controlled by the supreme court's decision in Murray v. State, 491 So.2d 1120 (Fla. 1986), and our decision in Woods v. State, 615 So.2d 197 (Fla. 1st DCA 1993), because the attempted murder and arson offenses combined to form a separate criminal episode from the other offenses. Thus, the issue is whether the offenses for which Parker received the consecutive HVFO minimum mandatory terms were part of a single criminal episode.
Parker urges that because the instant case evolved from a plea, and neither the factual basis for the plea nor the presentence investigation report provides any clues, it is unknown how much time elapsed between the events. Nonetheless, he urges it is clear that the crimes formed a continuing chain of events committed in the same locale without any significant separation in time or place. The record contains only an arrest report from which to glean the details of events on August 14, 1992. That report sets out in sordid detail the extent of the heinous crimes committed against the victim, and since no one has challenged its accuracy either below or on appeal, we rely on it in resolving the issue.
On or about August 14, 1992, Parker arrived at the victim's house under the pretense of performing yard work for the victim. The victim, an 87-year-old woman, recognized Parker as a man named "Tommy" who had done work for her in the past. Parker allegedly informed her that she was mistaken and asked to use her bathroom as a reason to enter her house. Once inside, Parker grabbed the victim, forced her into her bedroom, bound her mouth, wrists, and legs, and sexually battered her repeatedly. When he finished, Parker struck the victim in the face and demanded her money. After the victim informed Parker that she had no money, he ransacked the house and found $55.00 in the kitchen. While this was taking place, the victim was left tied up in the bed. Leaving the victim still bound, Parker exited the house via the back porch, which he then set on fire, leaving the victim to be burned to death. Fortunately, the victim was able to roll out of bed onto the floor and free her hands. She then crawled toward the front door and was ultimately rescued by a friend who had happened to drive up with the victim's groceries.
Parker contends that the foregoing events formed a continuous criminal episode without any significant separation. The state, on the other hand, contends that the fact that all offenses were aimed at one victim is not determinative and that once Parker had completed the offenses of sexual battery, kidnapping, and burglary inside the home and removed himself from the house, he then formed a separate and distinct intent to commit *74 arson and attempted murder. The state points to subsection 775.021(4), Florida Statutes (Supp. 1988), requiring the imposition of separate sentences when each offense requires proof of an element the other does not, and argues that the consecutive minimum mandatory terms were correct based on the fact that arson and attempted murder each require proof of an element that the other offenses  burglary, robbery, sexual battery, and kidnapping  do not. Parker counters that the state has confused the concepts of different criminal acts for purposes of a double jeopardy analysis and separate criminal acts for purposes of a Daniels/Palmer analysis.
We agree with Parker that the supreme court in Daniels and Palmer expressly rejected the state's argument that subsection 775.021(4) controls.[2] However, we agree with the state that the events that occurred outside the victim's home were sufficiently separate in nature, time, and place to permit the imposition of consecutive minimum mandatory terms under subsection 775.084(4)(b).
Palmer addressed the propriety of 13 consecutive minimum mandatory sentences imposed pursuant to subsection 775.087(2), Florida Statutes, based on Palmer's use of a firearm during the commission of multiple armed robberies at a funeral parlor during a wake. The supreme court held that Palmer could not receive consecutive 3-year minimum mandatory sentences because the underlying thirteen armed robberies were committed at the same time and place. While the court permitted separate sentences for each offense, it concluded that for offenses occurring in a single criminal episode, "[n]o-where in the language of section 775.087 [is there] express authority by which a trial court may deny, under subsection 775.087(2), a defendant eligibility for parole for a period greater than three calendar years." 438 So.2d at 3. Significantly, the court recognized that its decision would not prohibit consecutive minimum mandatory sentences for offenses "arising from separate incidents occurring at separate times and places." Id. at 4.
Recently, in Daniels, the supreme court had occasion to answer a certified question on a related issue, which it reworded to ask whether a trial court has "the discretion under sections 775.021(4) and 775.084, Florida Statutes (1988), to impose consecutive fifteen-year minimum mandatory sentences for first-degree felonies committed by an habitual violent felony offender arising from a single criminal episode[.]" 595 So.2d at 953. Answering the question in the negative, the court quashed that portion of the district court's decision under review which had authorized three consecutive 15-year minimum mandatory sentences for armed burglary, sexual battery with a deadly weapon, and armed robbery, all of which were characterized simply as arising out of a single criminal episode. The supreme court remanded with directions that two of the minimum mandatory sentences be made to run concurrently with the third. Id. at 954.
Relying on Palmer and Daniels, Parker urges that his consecutive minimum mandatory sentences likewise should be made to run concurrently with each other. The state argues for affirmance by citing to the supreme court's decision in Murray v. State, 491 So.2d 1120, and this court's decision in Woods v. State, 615 So.2d 197.
In Murray, the trial court imposed consecutive 3-year minimum mandatory sentences under subsection 775.087(2). The underlying facts were that the defendant and an accomplice abducted a woman at gunpoint and forced her to drive away with them in her vehicle. After driving for some distance, *75 Murray parked the car and the two men sexually assaulted the woman and removed her necklace. Afterwards, they drove the victim to a nearby wooded area where Murray walked with the victim away from the car and told her goodbye. As the victim began to walk away, Murray shot her through the back of the head, rendering her legally blind. Murray was convicted of kidnapping without a firearm, two counts of sexual battery with a firearm, robbery with a firearm, and attempted manslaughter with a firearm. Murray challenged the imposition of the consecutive 3-year minimum mandatory sentences, and the district court found that the actions which resulted in the two counts of sexual battery occurred at the same time and place, requiring the two minimum mandatory sentences imposed thereon to be served concurrently. The supreme court approved that portion of the district court's opinion. The court also approved the portion of the opinion upholding the imposition of consecutive minimum mandatory sentences imposed on the single sexual battery and the armed robbery charges, citing to language from Palmer that there is no prohibition against consecutive minimum mandatory sentences for offenses arising from separate incidents occurring at separate times and places. In doing so, the court stated:
[W]e find the sexual battery of the victim sufficiently separate in nature, time, and place from the armed robbery charge to justify application of the consecutive mandatory minimums. While the entire event could be labeled a "single criminal episode," the sexual battery occurred in one place and constituted one invasion of the victim, while the robberies committed under the threat of gunpoint occurred in other places and represented a separate and additional violation of the victim's most basic rights. The nature of these crimes and the manner of their commission justified the Fourth District's holding in this regard.
Murray, 491 So.2d at 1124.
This court recently applied that rationale in Woods v. State. In Woods, the defendant became involved in an argument with two other men in an area near a restaurant and bar. Woods ran away from the scene after the fight was broken up, but returned shortly thereafter with a pistol and shot a man outside the bar in the parking lot. After that, he went to the door of the restaurant and fired shots into the building. Another victim inside the building was shot in the leg. Our opinion mentioned that it was unclear how much time passed between the two shootings, and also noted that it was unclear what the distance was between the spot where the first victim was shot outside of the bar and the door of the bar. Woods was ultimately convicted of attempted second degree murder, aggravated battery, and shooting into an occupied building. He was classified as a habitual violent felony offender, and the trial court imposed consecutive minimum mandatory sentences under section 775.084 as to each count. In reviewing the events, we reversed the minimum mandatory sentences in regards to the counts charging aggravated battery and shooting into an occupied building because those offenses arose out of the shots Woods fired into the bar. In doing so, we reasoned that those offenses did not involve separate victims and a temporal break, and thus, they arose out of the same criminal incident. However, we affirmed the imposition of a consecutive minimum mandatory sentence in regard to the attempted murder count, which we held involved a separate victim from the foregoing counts, occurred in a separate location (outside the bar), and involved a break in time between when that offense was completed and the second crime began.
The task of determining when a criminal episode can be denominated "single" or "separate" for purposes of consecutive minimum mandatory sentencing is not an easy one. There is no "bright line" rule to which we can refer. As the above cases demonstrate, there have been attempts to loosely categorize criminal episodes by focusing on the nature of the offenses, the time sequence in which they were committed, and the place they were committed, see, e.g., Murray and State v. Boatwright, 559 So.2d 210 (Fla. 1990), as well as by focusing on whether there was a single victim or multiple victims, e.g., Woods. Palmer indicates that when making this determination, whether separate sentences *76 may be imposed for separate offenses occurring in the same criminal transaction or episode under subsection 775.021(4) is neither controlling nor relevant. Thus, when we stated in Woods that the imposition of consecutive minimum mandatory sentences is justified "where two separate and distinct criminal offenses have occurred," 615 So.2d at 198, it would be misleading to overlook the remainder of that discussion where we defined "separate offenses" in terms of separate victims, separate locations, and temporal breaks between the incidents, not in terms of separate statutory elements. Id. Obviously, in determining whether a series of criminal events constitutes a single criminal episode or separate criminal episodes, the focus must be directed to the facts of each individual case.
In reviewing the facts of the instant case, we conclude that the events are more like the circumstances involved in Murray and Woods than those involved in Palmer and Daniels, because we perceive a factual distinction between the offenses which occurred inside the house and those which occurred outside the house, including the location of the crimes and the temporal span of their commission. By analogy to Murray, we conclude that the crimes of attempted first degree murder and arson, committed outside the victim's house after the offenses inside the house had been completed, were "separate and additional violation[s] of the victim's most basic rights" from the violations she suffered inside her house. 491 So.2d at 1124. For these reasons, we affirm the imposition of the consecutive minimum mandatory sentences in this case.
AFFIRMED.
MINER and WEBSTER, JJ., concur.
NOTES
[1] Parker has since submitted supplemental authority attaching the supreme court's recent decisions in Brooks v. State, 630 So.2d 527 (Fla. 1993), and Hale v. State, 630 So.2d 521 (Fla. 1993). Therein, the court applied the reasoning in Daniels to hold that a trial court may not impose consecutive enhanced sentences under section 775.084, for crimes growing out of a single criminal episode. For the same reasons that we distinguish the rule in Daniels and Palmer from the circumstances herein, we hold that neither Brooks nor Hale mandates reversal.
[2] In Daniels, the supreme court held:

We cannot accept the State's contention that consecutive minimum mandatories are required because of the provisions of section 775.021, Florida Statutes (Supp. 1988). In the first place, our opinion in Palmer rejected the contention that section 775.021(4), Florida Statutes (1981), which was worded substantially the same as section 775.021(4)(a), Florida Statutes (Supp. 1988), permitted the stacking of consecutive minimum mandatory sentences. The subsequent addition of subsection (b) to section 775.021(4) [footnote omitted] was designed to overrule this Court's decision in Carawan v. State, 515 So.2d 161 (Fla. 1987), pertaining to consecutive sentences for separate offenses committed at the same time, and had nothing to do with minimum mandatory sentences.
595 So.2d at 954.