689 So.2d 1026 (1995)
Anthony MUNGIN, Appellant,
v.
STATE of Florida, Appellee.
No. 81358.
Supreme Court of Florida.
September 7, 1995.
Rehearings Denied February 8, 1996 and March 6, 1997.
*1027 Nancy A. Daniels, Public Defender and Steven A. Been, Assistant Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Attorney General and Curtis M. French, Assistant Attorney General, Tallahassee, for appellee.
*1028 PER CURIAM.
Anthony Mungin, a prisoner under a sentence of death, appeals his conviction of first-degree murder and the penalty imposed. We have jurisdiction based on article V, § 3(b)(1) of the Florida Constitution.
We affirm both the conviction and the death sentence.
Betty Jean Woods, a convenience store clerk in Jacksonville, was shot once in the head on September 16, 1990, and died four days later. There were no eyewitnesses to the shooting, but shortly after Woods was shot a customer entering the store passed a man leaving the store hurriedly with a paper bag. The customer, who found the injured clerk, later identified the man as Mungin. After the shooting, a store supervisor found a $59.05 discrepancy in cash at the store.
Mungin was arrested on September 18, 1990, in Kingsland, Georgia. Police found a.25-caliber semiautomatic pistol, bullets, and Mungin's Georgia identification when they searched his house. An analysis showed that the bullet recovered from Woods had been fired from the pistol found at Mungin's house.
Jurors also heard Williams rule[1] evidence of two other crimes. They were instructed to consider this evidence only for the limited purpose of proving Mungin's identity.
First, William Rudd testified that Mungin came to the convenience store where he worked on the morning of September 14, 1990, and asked for cigarettes. When Rudd turned to get the cigarettes, Mungin shot him in the back. He also took money from a cash box and a cash register. Authorities determined that an expended shell recovered from the store came from the gun seized in Kingsland.
Second, Thomas Barlow testified that he saw Meihua Wang Tsai screaming in a Tallahassee shopping center on the afternoon of September 14, 1990. Tsai had been shot while working at a store in the shopping center. A bullet that went through Tsai's hand and hit her in the head had been fired from the gun recovered in Kingsland.
The judge instructed the jury on both premeditated murder and felony murder (with robbery or attempted robbery as the underlying felony), and the jury returned a general verdict of first-degree murder.
In the penalty phase, several witnesses who knew Mungin while he was growing up testified that he was trustworthy, not violent, and earned passing grades in school. Mungin lived with his grandmother from the time he was five, but Mungin left when he was eighteen to live with an uncle in Jacksonville. An official from the prison where Mungin was serving a life sentence for the Tallahassee crime testified that Mungin did not have any disciplinary problems during the six months Mungin was under his supervision. Harry Krop, a forensic psychologist, testified that he found no evidence of any major mental illness or personality disorder, although Mungin had a history of drug and alcohol abuse. Krop said he thought Mungin could be rehabilitated because of his normal life before drugs, his average intelligence, and his clean record while in prison.
The jury recommended death by a vote of seven to five. The trial judge followed the jury's recommendation and sentenced Mungin to death. In imposing the death penalty, the trial judge found two aggravating factors: (1) Mungin had previously been convicted of a felony involving the use or threat of violence to another person;[2] and (2) Mungin committed the capital felony during a robbery or robbery attempt and committed the capital felony for pecuniary gain.[3] The trial judge found no statutory mitigation and gave minimal weight to the nonstatutory mitigation that Mungin could be rehabilitated and was not antisocial.
*1029 Mungin raises nine issues on this direct appeal.[4]

I. GUILT PHASE
We first address Issue 2, where Mungin argues that the evidence was not sufficient to support first-degree murder. The trial judge instructed the jury on both premeditated and felony murder, and the jury returned a general verdict of first-degree murder. We agree with Mungin only that the judge erred in denying his motion for judgment of acquittal as to premeditation.
Premeditation is "a fully formed conscious purpose to kill that may be formed in a moment and need only exist for such time as will allow the accused to be conscious of the nature of the act he is about to commit and the probable result of that act." Asay v. State, 580 So.2d 610, 612 (Fla.), cert. denied, 502 U.S. 895, 112 S.Ct. 265, 116 L.Ed.2d 218 (1991).
In a case such as this one involving circumstantial evidence, a conviction cannot be sustainedno matter how strongly the evidence suggests guiltunless the evidence is inconsistent with any reasonable hypothesis of innocence. McArthur v. State, 351 So.2d 972, 976 (Fla.1977). A defendant's motion for judgment of acquittal should be granted in a circumstantial-evidence case "if the state fails to present evidence from which the jury can exclude every reasonable hypothesis except that of guilt." State v. Law, 559 So.2d 187, 188 (Fla.1989).
The State presented evidence that supports premeditation: The victim was shot once in the head at close range; the only injury was the gunshot wound; Mungin procured the murder weapon in advance and had used it before; and the gun required a six-pound pull to fire. But the evidence is also consistent with a killing that occurred on the spur of the moment. There are no statements indicating that Mungin intended to kill the victim, no witnesses to the events preceding the shooting, and no continuing attack that would have suggested premeditation. Although the jury heard evidence of collateral crimes, the jury was instructed that this evidence was admitted for the limited purpose of establishing the shooter's identity.
Although the trial judge erred in denying the motion for judgment of acquittal as to premeditation, we do not reverse Mungin's first-degree murder conviction because the judge correctly denied the motion as to felony murder.
The evidence shows that Mungin entered the store carrying a gun, that $59.05 was missing from the store, that money from the cash box was gone, that someone tried to open a cash register without knowing how, and that Mungin left the store carrying a paper bag. We find that this evidence supports robbery or attempted robbery, and there is no reasonable hypothesis to the contrary.
Because the evidence does not support premeditation, it was error to instruct the jury on both premeditated and felony murder. See McKennon v. State, 403 So.2d 389 (Fla.1981) (finding error to instruct on robbery as it relates to felony murder where there was no basis in the evidence for the robbery instruction). However, the error was clearly harmless in this case. The evidence supported conviction for felony murder and the jury properly convicted Mungin of first-degree murder on this theory.
*1030 While a general guilty verdict must be set aside where the conviction may have rested on an unconstitutional ground[5] or a legally inadequate theory,[6] reversal is not warranted where the general verdict could have rested upon a theory of liability without adequate evidentiary support when there was an alternative theory of guilt for which the evidence was sufficient. Griffin v. United States, 502 U.S. 46, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991). The Supreme Court explained this distinction in Griffin as follows:
Jurors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to lawwhether, for example, the action in question is protected by the Constitution, is time barred, or fails to come within the statutory definition of the crime. When, therefore, jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error. Quite, the opposite is true, however, when they have been left the option of relying upon a factually inadequate theory, since jurors are well equipped to analyze the evidence, see, Duncan v. Louisiana, 391 U.S. 145, 157, 88 S.Ct. 1444, 1451, 20 L.Ed.2d 491 (1968). As the Seventh Circuit has put it:
"It is one thing to negate a verdict that, while supported by evidence, may have been based on an erroneous view of the law; it is another to do so merely on the chanceremote, it seems to usthat the jury convicted on a ground that was not supported by adequate evidence when there existed alternative grounds for which the evidence was sufficient." United States v. Townsend, 924 F.2d 1385, 1414 ([7th Cir.] 1991).
Griffin, 502 U.S. at 59-60, 112 S.Ct. at 474.
Based upon the foregoing, we find no reasonable possibility that the erroneous instruction contributed to Mungin's conviction, and thus the error was harmless. State v. DiGuilio, 491 So.2d 1129 (Fla.1986). Therefore, Mungin is not entitled to relief on this basis.[7]

II. PENALTY PHASE
When Mungin was tried for the instant case, he was serving a life sentence as an habitual offender for the Tallahassee crime. As his first penalty phase issue (Issue 4), Mungin argues that fundamental error occurred when a defense witness testified during the penalty phase that inmates serving life sentences are eligible for conditional release and could be freed from prison in as little as five years. Glenn Young, a correction/probation officer at the Cross City Correctional Institution, had supervised Mungin after his arrival at the prison. During questioning by defense counsel, Young said, "[L]ife doesn't really mean life. I mean, it means life, but there are inmates that are released with a life sentence."
Mungin maintains that this testimony presented an erroneous picture of what happens to inmates serving life sentences. He did not, however, make a contemporaneous objection to preserve this issue.
Any error that occurred was not fundamental. See State v. Smith, 240 So.2d 807, 810 (Fla.1970) (defining fundamental error as error that goes to the foundation of the case or to the merits of the cause of action). Young's testimony did not go to the foundation of the case. We also note that Mungin *1031 invited this testimony because Young was his witness. Although the State sought to capitalize on this apparently unexpected testimony, defense counsel elicited on redirect examination that inmates serving life sentences typically are not eligible for early release. Further, the trial court correctly instructed the jury on the law at the time for sentences in capital cases: death or life in prison with a minimum mandatory term of twenty-five years. Thus, we find no merit to this issue.
Mungin argues in Issue 6 that the trial judge should have specifically instructed the jury that Mungin's age at the time of the crimetwenty-fourcould be considered in mitigation. See § 921.141(6)(g), Fla.Stat. (1991). Instead, the trial court gave the general instruction that jurors could consider "[a]ny aspect of the defendant's character or record and any other circumstances of the offense."
This Court has held that, under certain circumstances, the general instruction on mitigation is sufficient to allow a jury to rely on the evidence and assign whatever weight it wishes to a defendant's age. Cave v. State, 476 So.2d 180, 187-88 (Fla.1985), cert. denied, 476 U.S. 1178, 106 S.Ct. 2907, 90 L.Ed.2d 993 (1986); see also Smith v. State, 492 So.2d 1063, 1067 (Fla.1986) ("We do not establish a maximum age below which the instruction must always be given.").
We have observed that "age is simply a fact, every murderer has one." Echols v. State, 484 So.2d 568, 575 (Fla.1985), cert. denied, 479 U.S. 871, 107 S.Ct. 241, 93 L.Ed.2d 166 (1986). How a defendant's age is viewed may differ from case to case. Compare Huddleston v. State, 475 So.2d 204, 206 (Fla.1985) (age of twenty-three was mitigating factor) with Lara v. State, 464 So.2d 1173, 1179 (Fla.1985) (age of twenty-five did not require instruction on age as a mitigating circumstance). The better practice may be to give the specific instruction on age, but, under the circumstances of this case, the judge did not abuse his discretion in failing to give the instruction. Nothing about Mungin's age constitutes mitigation for this crime. The record reflects that Mungin had no neurological impairment, did well in school, and was about one credit short of graduation from high school. He left home at age eighteen to live with an uncle in Jacksonville. Although Mungin had used drugs and alcohol, there was no evidence to suggest that he was under the influence of either substance at the time of the crime. Thus, we find no error on this issue.
In Issue 7, Mungin argues that the trial judge erred in failing to find and give some weight to unrebutted nonstatutory mitigation. We find this issue to be without merit.
Our decision in Campbell v. State, 571 So.2d 415, 419 (Fla.1990), requires a sentencing court to expressly evaluate in its written order each mitigating circumstance proposed by the defendant to determine whether the evidence supports it and whether any proposed nonstatutory mitigation is truly mitigating. Mungin says that the trial judge did not specifically evaluate the substance of the evidence from relatives and others who knew him during high school and that the sentencing order does not mention his good prison record or Dr. Krop's testimony that Mungin had used alcohol and drugs for about four years.
The sentencing order reflects that the trial judge heard the testimony of witnesses who knew Mungin through his high school years, but attached "no significance or value" to this testimony because most of the witnesses had had little or no contact with Mungin since he was eighteen years old. We have reviewed the record and do not believe that the trial judge abused his discretion in dismissing this evidence as irrelevant to his sentencing decision.
Further, the sentencing order's reference to the fact that Mungin was capable of rehabilitation encompasses his prison record and the reference to Dr. Krop's findings on Mungin's mental state encompasses drug and alcohol use.
We find no merit to Issue 5 (jury instructed on and found merged aggravating factor of robbery and pecuniary gain). We also find that Issue 8 is without merit because we uphold the merged aggravating factor of robbery and pecuniary gain and we find that the *1032 trial judge appropriately evaluated the mitigation. Under a proportionality review, the death sentence is warranted.
The points raised in Mungin's final issue (Issue 9)whether his conviction and death sentence are unconstitutionalare either not preserved or without merit.
Accordingly, although we do not find premeditation, we find sufficient evidence of felony murder and affirm Mungin's conviction of first-degree murder. We also affirm the death sentence.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN, HARDING and WELLS, JJ., concur.
ANSTEAD, J., dissents with an opinion.
ANSTEAD, Judge, dissenting.
I would grant rehearing in this case and reverse and remand for a a new trial based upon our conclusion that the evidence was insufficient to sustain a finding of premeditation. Relying on McKennon v. State, 403 So.2d 389 (Fla.1981), we concluded that the trial court erred in instructing the jury on both premeditated and felony murder because the evidence presented by the State was insufficient to support premeditation. Majority op. at 1028. Indeed, our decision in McKennonwhere we found evidence similar to the evidence presented in this case insufficient to support robbery as an underlying predicate to felony murdersupports the further conclusion that the trial court's error here was not harmless.
In McKennon, the defendant was indicted for first-degree murder and found guilty after a jury trial. On appeal, he challenged his conviction on grounds that the trial court erred in instructing the jury on robbery as an underlying predicate for felony murder where there was insufficient evidence to support a robbery instruction. 403 So.2d at 390. The State contended that a discrepancy in the amount of money shown in bookkeeping records and the amount contained in the cash register of the barbershop after the murder constituted a sufficient basis for the robbery instruction. Id. We expressly rejected the State's argument in McKennon and found that the trial court had erred in giving the instruction because "[t]he purported bookkeeping discrepancy did not prove beyond a reasonable doubt that any funds were taken from the [victim] and hence was insufficient to prove commission of a robbery." Id. at 391.
Likewise, Mungin was not even charged with robbery or attempted robbery. And, similar to the paucity of evidence of robbery which we found to be insufficient in McKennon, the essence of the State's felony murder theory herewith robbery or attempt as the underlying predicateis a $59.05 bookkeeping discrepancy. Moreover, the prosecutor twice explicitly reminded the jury during closing argument that Mungin was not charged with robbery and told them that they did not have to find Mungin guilty of robbery in order to convict him of first-degree murder. Instead, the State focused on premeditation and treated the alternative "felony murder" theory as nothing more than a weak backup. While it may be that the evidence of robbery against Mungin, unlike McKennon, is enough to meet the threshold standard of sufficiency, the evidence is thin at best and certainly not strong enough to render the trial court's error in instructing the jury on premeditation harmless beyond a reasonable doubt.
Furthermore, I also would grant rehearing in this case because I believe that the United States Supreme Court's decision in Griffin v. United Statesupon which the majority relies for finding the error here to be a harmless onesimply makes no sense. Rather, there is a solid body of caselaw which states that where a jury is instructed that it can rely on any of two or more independent grounds to support a single count, and one of those grounds was improper, as the premeditation theory was here, a general verdict of guilt must be set aside because it may have rested exclusively on the improper ground. See Yates v. United States, 354 U.S. 298, 311-12, 77 S.Ct. 1064, 1072-73, 1 L.Ed.2d 1356 (1957); Stromberg v. California, 283 U.S. 359, 369-70, 51 S.Ct. 532, 536, 75 L.Ed. 1117 (1931); see also Zant v. Stephens, 462 U.S. 862, 881, 103 S.Ct. 2733, 2744-45, 77 *1033 L.Ed.2d 235 (1983) ("One rule derived from the Stromberg case is that a general verdict must be set aside if the jury was instructed that it could rely on any of two or more independent grounds, and one of those grounds is insufficient, because the verdict may have rested exclusively on the insufficient ground.") (emphasis added).
In Mills v. Maryland, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), the Supreme Court again reiterated the Stromberg rule and emphasized the importance of its application in the context of a jury's verdict in a capital sentencing proceeding.
With respect to findings of guilt on criminal charges, the Court consistently has followed the rule that the jury's verdict must be set aside if it could be supported on one ground but not on another, and the reviewing court was uncertain which of the two grounds was relied upon by the jury in reaching the verdict. See e.g., Yates v. United States, 354 U.S. 298, 312 [77 S.Ct. 1064, 1073, 1 L.Ed.2d 1356] (1957); Stromberg v. California, 283 U.S. 359, 367-368 [51 S.Ct. 532, 535, 75 L.Ed. 1117] (1931). In reviewing death sentences, the Court has demanded even greater certainty that the jury's conclusions rested on proper grounds. See, e.g., Lockett v. Ohio, 438 U.S. [586], at 605 [98 S.Ct. 2954, 2965, 57 L.Ed.2d 973] ("[T]he risk that the death penalty will be imposed in spite of factors which may call for a less severe penalty is... unacceptable and incompatible with the commands of the Eighth and Fourteenth Amendments"); Andres v. United States, 333 U.S. 740, 752 [68 S.Ct. 880, 885-886, 92 L.Ed. 1055] (1948) ("That reasonable men might derive a meaning from the instructions given other than the proper meaning of § 567 is probable. In death cases doubts such as those presented here should be resolved in favor of the accused"); accord, Zant v. Stephens, 462 U.S. 862, 884-885 [103 S.Ct. 2733, 2746-2747, 77 L.Ed.2d 235] (1983). Unless we can rule out the substantial possibility that the jury may have rested its verdict on the "improper" ground, we must remand for resentencing.
Id. at 376-77, 108 S.Ct. at 1866-67 (footnote omitted). Nevertheless, as noted by the majority, it appears that the Supreme Court has retreated from the Stromberg rule in cases where one of the alternative theories of guilt underlying a conviction is improper because it is based on insufficient evidence. See Griffin v. United States, 502 U.S. 46, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991).
In Griffin, the defendant was charged with drug-conspiracy offenses and the jury returned a general verdict of guilt. The Seventh Circuit affirmed the defendant's convictionas did the Supreme Courtrejecting her argument that "the general verdict could not stand because it left in doubt whether the jury had convicted [the defendant] of conspiring to defraud the IRS, for which there was sufficient proof, or of conspiring to defraud the DEA, for which (as the Government concedes) there was not." Id. at 48, 112 S.Ct. at 468. Without mentioning the court's previous statements in Zant v. Stephens or Mills, Justice Scalia concluded for the majority in Griffin that the Griffin case was not subject to the rule set out in Stromberg and Yates and later cases. Rather, Justice Scalia found the error at issue in Griffin to be distinguishable from the errors requiring reversal in Stromberg and Yates because, unlike those early cases, in Griffin "one of the possible bases of conviction was neither unconstitutional as in Stromberg, nor even illegal as in Yates, but merely unsupported by sufficient evidence." 502 U.S. at 56, 112 S.Ct. at 472. As the majority in this case notes, Justice Scalia explained the distinction as follows:
Jurors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to lawwhether, for example, the action in question is protected by the Constitution, is time barred, or fails to come within the statutory definition of the crime. When, therefore, jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error. Quite the opposite is true, however, when they have been left the option of relying upon a factually inadequate theory, since jurors are well equipped to analyze the evidence.
*1034 Id. at 59, 112 S.Ct. at 474. It is with this reasoning that I most respectfully take issue. Certainly, jurors are well equipped to analyze evidencethat's their job as fact finders. Obviously, jurors instructed to determine whether a murder was premeditated will attempt to do so. However, jurors are not well equipped to second guess the trial court. Indeed, jurors are prohibited from doing so. Nevertheless, that is exactly what Justice Scalia and the majority assume the jury must have done here in finding the error harmless.
The rationale of the majority blindly presumes that the jury in this case retired to deliberate as to Mungin's guilt, after being specifically instructed on premeditation and felony murder, and then wholly disregarded the instruction on premeditation, having agreed amongst themselves that the trial court must have been mistaken in instructing them on that theory because the evidence was legally insufficient to support it. Clearly, that is not what the jury did here, or what any reasonable jury would do. In fact, this juryas are all jurieswas instructed that they must follow the trial court's instructions and that such instructions are not to be disregarded.
In my view, the Griffin court's distinction between "legal error" and "insufficiency of proof" is one that has absolutely no practical or meaningful difference. No matter what you call it, the trial court here erroneously submitted this case to the jury on the theory of premeditationwhich was the main focus of the State's case against Munginand there is simply no way that we can know or conclude that the error did not contribute to the jury's verdict. In fact, given the State's emphasis and strong reliance on the premeditation theory, and disparagement of the robbery theory, it is highly likely that the jurors relied on the improper premeditation theory in finding guilt.
In this case the State, having failed to carry its burden of proving premeditation at trial and barely meeting its burden as to felony murder, not only emphasized in its closing argument to the jury that Mungin was guilty of premeditated murder, but virtually dismissed the felony murder theory from the jury's consideration. The trial court then compounded the error by improperly allowing the jury to consider the insufficient premeditation theory. We have "no reason to think that [the jury's] own intelligence and expertise ... save[d] them from that error," id. at 59, 112 S.Ct. at 474, given that the State's presentation of its case and argument alone raise a strong likelihood that the jury relied on the improper theory of premeditation as the basis for its general verdict of guilt. Nor do we have reason to think that the possibility of the jury relying on the improper premeditation theory of guilt to support its verdict was a "remote" one. See Griffin, 502 U.S. at 59, 112 S.Ct. at 474. Rather, while there arguably may be sufficient evidence in this case to support Mungin's conviction on the alternative legal ground of felony murder, we have every reason to think that the jurors in this case rejected that evidence and rested their verdict on premeditation, just as the State urged them to do.
Interestingly, our own district courts also find the United States Supreme Court's questionable reasoning in Griffin unpersuasive. The district courts continue to recognize the "reversible error" standard of Mills and consistently apply it. Several recent decisions illustrate this point. For instance, in Tape v. State, 661 So.2d 1287 (Fla. 4th DCA 1995), the Fourth District held that it was required to vacate the defendant's conviction for attempted first-degree murder and remand for a new trial:
We sua sponte vacate the conviction for attempted first degree murder based on State v. Gray, 654 So.2d 552 (Fla.1995), which applies to all cases pending on direct review or not yet final. While this issue was not raised, no one may be convicted of a nonexistent crime. See Achin v. State, 436 So.2d 30, 31 (Fla.1982). In Gray, the supreme court held that there is no crime of attempted felony murder. In this case the defendant was convicted of attempted first degree murder, but the state argued both felony murder and premeditated murder to the jury. In Mills v. Maryland, 486 U.S. 367, 376, 108 S.Ct. 1860, 1866, 100 L.Ed.2d 384, 395 (1988), the United States *1035 Supreme Court articulated the well settled rule that a criminal jury verdict must be set aside if it could be supported on one ground but not on another and the reviewing court is uncertain which of the two grounds was relied upon by the jury in reaching its verdict. It is not possible with the evidence and argument in this case to determine which theory the jury used as its basis for the conviction. Therefore, we are compelled to reverse the conviction.
Id. at 1288.
Similarly, in Lamb v. State, 668 So.2d 666 (Fla. 2d DCA 1996), the Second District reversed the defendant's conviction for attempted murder in light of our decision in State v. Gray, 654 So.2d 552 (Fla.1995). Relying in part on United States v. Garcia, 907 F.2d 380, 381 (2d Cir.1990) (holding that because "there was insufficient evidence for one of the theories, then the verdict is ambiguous and a new trial must be granted"), (emphasis added), the district court explained:
The [trial] court instructed the jury as to Count I on attempted second degree murder (depraved mind) and attempted third degree murder (felony murder) and lesser included offenses. The jury found the appellant guilty as charged. Because both attempted second degree murder and attempted third degree murder were charged in the same count, and the record does not otherwise show that he was convicted of attempted second degree murder, we cannot determine upon which offense the jury convicted him.
The State of Florida no longer recognizes the crime of attempted felony murder. State v. Gray, 654 So.2d 552 (Fla. 1995); State v. Grinage, 656 So.2d 457 (Fla.1995). Because Gray must be applied to all cases pending on direct review or not yet final at the time it was decided, we must reverse the conviction. However, because it is impossible to determine which of the two theories of attempted murder the jury accepted, remand for retrial on the charge of attempted second degree murder is required. Humphries v. State, 676 So.2d 1 (Fla. 5th DCA 1995), citing United States v. Garcia, 938 F.2d 12 (2d Cir.1991).
Lamb, 668 So.2d at 667.
And most recently, the Fifth District in an en banc decision vacated a defendant's attempted first-degree murder conviction and remanded for a new trial because the jury's guilty verdict may have rested on a nonexistent crime. Allen v. State, 676 So.2d 491 (Fla. 5th DCA 1996). In so doing, the district court explained that the outcome was controlled by the Mills line of cases:
The State argues that Allen's conviction for murder is controlled by Murray v. State, 491 So.2d 1120 (Fla.1986). In Murray the defendant was charged with attempted first-degree murder and the jury convicted him of the lesser included offense of attempted manslaughter with a firearm. The defendant sought reversal on appeal, pointing to the fact that the jury had been improperly instructed that attempted manslaughter could be based on culpable negligence as well as on an act or procurement. See Taylor v. State, 444 So.2d 931 (Fla.1983) (holding that a conviction of attempted manslaughter must be based on a showing of an act or procurement rather than mere culpable negligence). The supreme court affirmed Murray's convictions on two grounds. Not only did it find that the issue of jury instructions had not been properly preserved for appeal, but also the court independently reviewed the record and found that ample and sufficient evidence existed to support a conclusion that the shooting of the victim "was the result of an act of petitioner done with the requisite criminal intent and was not mere culpable negligence." Murray, 491 So.2d at 1122.
We have carefully reviewed Murray and hold that to the extent it may be in conflict with our opinion, Murray is implicitly overruled by the supreme court's holding in Gray that Gray is to be applied to "all cases pending on direct review or not yet final." Gray, 654 So.2d at 554 (citing Smith v. State, 598 So.2d 1063, 1066 (Fla. 1992)); see also State v. Grinage, 656 So.2d 457, 458 (Fla.1995) (reiterating that the holding in Gray "is applicable to all cases *1036 pending on direct review or not yet final at the time of the Gray opinion."). On appeal, the question for this court is not whether evidence exists which would support conviction upon the valid theory, but rather is whether it is possible that the conviction was based upon the invalid theory and nothing in the record establishes otherwise. We also note that Murray appears to be in conflict with the United States Supreme Court's decision in Mills v. Maryland, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988) which held that "[w]ith respect to findings of guilt on criminal charges ... the jury's verdict must be set aside if it could be supported on one ground but not on another, and the reviewing court [is] uncertain which of the two grounds was relied upon by the jury in reaching the verdict." 486 U.S. at 376, 108 S.Ct. at 1866. This is so because the jury is the sole arbiter of the facts. Even if there is evidence in the record supporting conviction on the alternative legal ground, we, as an appellate court, cannot determine if the jury accepted that evidence. Accordingly, we reverse Allen's attempted first-degree murder conviction. Because it is impossible to determine which of the two theories the jury accepted, remand for retrial on the charges of attempted premeditated murder is required. See United States v. Garcia, 938 F.2d 12 (2d Cir.1991), cert. denied, 502 U.S. 1030, 112 S.Ct. 868, 116 L.Ed.2d 774 (1992); see also Lamb v. State, 668 So.2d 666 (Fla. 2d DCA 1996); Humphries v. State, 676 So.2d 1 (Fla. 5th DCA 1995); Thompson v. State, 667 So.2d 470 (Fla. 3d DCA 1996); Tape v. State, 661 So.2d 1287 (Fla. 4th DCA 1995); Ward v. State, 655 So.2d 1290 (Fla. 5th DCA 1995).
Id. at 492 (emphasis added). We should pay attention to the well-reasoned opinions of our appellate colleagues.
Perhaps the real solution to the uncertainty and potential injustice created by the "two issue" rule at issue herein is to recede from our holdings in previous cases that capital defendants are not entitled to special verdicts. See, e.g., Brown v. State, 473 So.2d 1260, 1265 (Fla.), cert. denied, 474 U.S. 1038, 106 S.Ct. 607, 88 L.Ed.2d 585 (1985) (holding that capital defendant is not entitled to special verdict form indicating whether first-degree murder conviction was based upon premeditated murder or felony murder); Buford v. State, 492 So.2d 355, 358 (Fla.1986) (same).[8] Instead, we should adopt the procedure we have long since mandated in civil cases allowing a defendant the option of requesting a special verdict form when facing alternative theories of liability. See Colonial Stores, Inc. v. Scarbrough, 355 So.2d 1181 (Fla.1977).
In Scarbrough, this Court explained that allowing a defendant the opportunity to request a special verdict is an essential element to the "two issue" rule:
This raises an issue with respect to which authorities among different jurisdictions are divided. The question arises where two or more issues are left to the jury, and [sic] of which may be determinative of the case, and a general verdict is returned, making it impossible to ascertain the issue(s) upon which the verdict was founded. One line of authority holds that reversal is improper where no error is found as to one of the issues, as the appellant is unable to establish that he has been prejudiced. Berger v. Southern Pacific Co., 144 Cal. App.2d 1, 300 P.2d 170 (Cal. 1st DCA 1956); Altieri v. Peattie Motors, Inc., 121 Conn. 316, 185 A. 75 (1936); Knisely v. Community Traction Co., 125 Ohio St. 131, 180 N.E. 654 (1932); Dwyer v. Christensen, 77 S.D. 381, 92 N.W.2d 199 (1958). This is known in jurisprudence as the "two issue" rule. It is a rule of policy, designed to simplify the work of the trial courts and to limit the scope of proceedings on review. See Harper v. Henry, 110 Ohio App. 233, 169 N.E.2d 20 (Ct.App.1959).
The weight of authority to the contrary mandates a reversal where error has affected one issue unless it is clear that the complaining party has not been injured thereby. Sunkist Growers, Inc. v. Winckler & Smith Citrus Products Co., 370 U.S. 19, 82 S.Ct. 1130, 8 L.Ed.2d 305 (1962); State *1037 of Maryland v. Baldwin, 112 U.S. 490, 5 S.Ct. 278, 28 L.Ed. 822 (1884); Maccia v. Tynes, 39 N.J.Super. 1, 120 A.2d 263 (N.J.App.1956); Bredouw v. Jones, 431 P.2d 413 (Okl.1966).
We believe that the "two issue" rule represents the better view. At first thought, it may seem that injustice might result in some cases from adoption of this rule. It should be remembered, however, that the remedy is always in the hands of counsel. Counsel may simply request a special verdict as to each count in the case. See Harper v. Henry, supra. Then, there will be no question with respect to the jury's conclusion as to each. If the trial court fails to submit such verdicts to the jury, counsel may raise an appropriate objection.
Had petitioners in the instant case requested special verdicts and objected to submission of a general verdict form to the jury, it would have been necessary for the district court to determine the sufficiency of the evidence to sustain the false imprisonment count as well as the malicious prosecution count. If there was error as to either count, the district court should then remand the case for a new trial as to both counts. However, petitioners failed to meet these requirements.
Id. at 1186 (emphasis added).
In capital cases in particular, as emphasized in Mills, where a defendant faces the ultimate penalty of death, we should want to have as much knowledge about the jury's verdict as possiblenot lessin order to enhance the review process. In essence, our current rule prohibiting special verdicts in capital cases amounts to a Catch-22 for the defendant. First, we prohibit a defendant, like Mungin, who faces a first-degree murder conviction on alternative theories of guilt and possible death sentence, from even having the option of a special verdict form; yet, the trial court submits both theories to the jury. Then, on appeal, this Court will uphold the conviction even ifas is the case herethe theory upon which the State built its case suffers from an insufficiency of evidence and it is utterly impossible to tell which theory the jury utilized in reaching its verdict. In a case such as this one, there simply is no reason why a defendant should not be able to request a special verdict form.
To conclude, I dissent because I believe the majority has made a grave mistake in characterizing the trial court's error as harmless. Given the weakness of the State's felony-murder theory and the prosecutor's cursory dismissal of that theory of guilt in closing argument, we cannot conscientiously conclude that the trial court's error in improperly instructing the jury on premeditation did not contribute to the jury's verdict of guilt in this case. State v. DiGuilio, 491 So.2d 1129, 1136 (Fla.1986). We should grant rehearing in this case and remand for a new trialthe outcome of which, unlike this one, we could view with confidence.
NOTES
[1] Williams v. State, 110 So.2d 654, 659, 662 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959); see also § 90.404(2), Fla.Stat. (1991).
[2] § 921.141(5)(b), Fla.Stat. (1991).
[3] § 921.141(5)(d), (f), Fla.Stat. (1991). The trial judge recognized that these two aggravating factors merged and treated them as one aggravator. He also instructed jurors that if they found these two aggravators, they were to count them as one.
[4] Whether (1) the trial court erred in overruling a defense objection to the State's peremptory strike of a black prospective juror; (2) the evidence was sufficient to support first-degree murder; (3) the trial court erred in allowing the State to introduce irrelevant evidence that Mungin shot a collateral crime victim in the spine; (4) fundamental error occurred when a defense witness testified in the penalty phase that inmates serving life sentences are eligible for conditional release and could be released in as little as five years; (5) the trial court erred in instructing the jury on and in finding the aggravating circumstances of robbery and pecuniary gain; (6) the trial court erred in refusing to instruct the jury that Mungin's age could be considered in mitigation; (7) the trial court erred in failing to find and give some weight to unrebutted nonstatutory mitigation; (8) the death sentence is appropriate if this Court eliminates the aggravating circumstances of robbery and pecuniary gain and considers mitigation that the trial court failed to find; and (9) Mungin's conviction and death sentence are unconstitutional.
[5] See Stromberg v. California, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931) (reversing general guilty verdict under a California statute that prohibited the flying of red flags on three alternative grounds, one of which violated rights guaranteed by the First Amendment).
[6] See Yates v. United States, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957) (reversing general guilty verdict for conspiracy where one of the possible bases for conviction was legally inadequate because of a statutory time bar).
[7] Mungin raises two other guilt-phase issues. Issue 1 (whether trial court erred in overruling a defense objection to the State's peremptory challenge of a black prospective juror) has not been preserved for our review. Any error in Issue 3 (concerning introduction of evidence that Mungin shot a collateral crime victim in the spine), was harmless. The State did not dwell on or unduly emphasize where that victim was shot.
[8] It should be noted that, unlike Mungin, the defendants in these cases did not challenge the sufficiency of evidence as to either theory of guilt on appeal.